JOHN FARRINGTON, Trustee, Plaintiff and Respondent v. THE NEW ENGLAND INVESTMENT COMPANY and OLE SERUMGARD, County Treasurer of Ramsey County, D. T., Defendants and Appellants.

1. **Taxation—Assessment—Resignation of Assessor; Roll Not Verified.**

   In an action in equity brought to cancel certain tax certificates and annul tax proceeding, held, that a county assessment made by the proper assessor, in the proper time and manner, on the proper blank forms for listing and assessing property, but not copied into the assessment roll until after such assessor had resigned, was not void in equity when it appears that said assessment was in fact copied accurately into the assessment roll, and there is no showing that said assessment was in any manner unfair or inequitable. Held, further, that the absence of any verification of such assessment roll did not invalidate the assessment in equity.

2. **Same; Proceedings Presumed Legal.**

   Presumptions are in favor of the legality of tax proceedings; and a levy properly made will, in equity, be held void only when it clearly appears that such levy was for purposes not authorized by law.

3. **Assessor; Power to Appoint Deputy—Assessment Not Made by Proper Officer Void.**

   The duties of an assessor in fixing values upon property are judicial in their nature, and cannot be performed by deputy, in the absence of an express statute. The city assessor of a city organized under chapter 24 of the Political Code of Dakota Territory has no authority to appoint a deputy; and an assessment of the property of such city by a

pretended deputy assessor, which was never in any manner adopted or ratified by the city assessor, is a nullity, and no tax can be predicated thereon.

**4.   Same; When Court Will Restrain Tax Proceedings.**

Courts of equity should, in general, interfere to restrain the collection of a tax, or annul tax proceedings, only where it appears either that the property sought to be taxed is exempt from taxation, or that the tax itself is not warranted by law, or the persons assuming to assess and levy the same are without authority so to do, or where the proper taxing officials have acted fraudulently; and, in addition, plaintiff must bring himself within some recognized head of equity jurisdiction; and in the absence of statutory provisions regulating the subject, as a condition to relief in equity, the applicant must pay or tender the amount of taxes properly chargeable against his property.

**5.   Same; Court Should Enter Judgment for Amount of Legal Tax.**

*Held, further,* that such action, in this state, comes within the provisions of section 1643 of the Compiled Laws, and that, instead of requiring the payment of the legal charges as a condition precedent to relief in equity, it becomes the duty of the trial court to enter judgment against the applicant for the amount of such legal taxes.

WALLIN, J., dissents.

(Opinion Filed April 1, 1890.]

*A*PPEAL from district court, Ramsey county; Hon. WM. B. MCCONNELL, Judge.

This case was argued before the supreme court of Dakota Territory and the judgment of the district court was there affirmed. A re-argument was granted, pending which the territorial courts were succeeded by those of the states and this case passed to the supreme court of North Dakota.

J. F. McGee, for the appellants, argued: That the complaint did not state a cause of action, because it did not allege payment or tender of the taxes due; that the omission of the assessor's oath from the roll was not fatal to the validity of the tax. Counsel did not discuss in his brief the effect of the resignation of the county assessor before the completion of the roll, nor the legality of the city assessment made by a so-called deputy assessor. The findings of the district court do not show that the city assessment was made by a "deputy" assessor, but that fact only

appears from the evidence printed in the appellant's abstract and quoted in his brief.

W. E. Dodge, for respondent, argued: That the law does not require payment or tender of a void tax, as a condition precedent to relief from the tax; citing, Hart v. Henderson, 17 Mich. 218; Marsh v. Supervisors, 42 Wis. 502; Weller v. St. Paul, 5 Minn. 70; Cooley on Taxation, p. 552.

A partial judgment for the payment of taxes will never be rendered unless the record shows what is the amount due; citing, Hebard v. Ashland Co., 55 Wis. 145; Desty on Taxation, vol. 2, p. 905; State v. Cooper, 18 N. W. 438; Boeck v. Merriam, 4 N. W. 962. That the failure of the assessor to return the roll on or before the first Monday in July was fatal to the tax; citing, Cooley, p. 415; Painter v. Hall, 75 Ind. 209; Mix v. People, 72 Ill. 241; Henry v. Chester, 15 Vt. 468. That there is no such officer as "deputy assessor" of Devil's Lake city, therefore the assessment made by such "deputy assessor" was void.

BARTHOLOMEW, J.  In 1885 the plaintiff, John Farrington, as trustee for the St. Paul, Minneapolis & Manitoba Railway Company, owned a large number of town lots in the city of Devil's Lake, in Ramsey county. At the regular tax-sale in the year 1886, said lots were sold for the delinquent taxes of 1885, as the same appeared on the books of the treasurer of said county. The sale was made by one John W. Maher, who, as treasurer of Ramsey county, was the predecessor in office of the defendant, Ole Serumgard. The lots were purchased by, and the certificates of sale issued by said Maher, to the defendant the New England Investment Company. It is to declare said tax void, and to cancel said certificates, that this action is brought. The lots were sold for both county and city taxes; both taxes being included in one certificate.

The complaint after the formal allegations as to parties plaintiff and defendant, and a description of the property affected, alleges: "That in the year 1885 the officers of said county of Ramsey, and the officers of said city of Devil's Lake, a municipal corporation situated in said county, which officers were authorized by the laws of this territory to assess

property therein for the purposes of taxation, and to levy taxes thereon, pretended to assess all the said parcels of land for the purposes of taxation, and pretended to levy certain taxes thereon, to-wit, territorial, county, city, and other taxes, for that year, amounting in the aggregate to the sum of $1,530.97;" that all of the taxes so assessed against said lands in the year 1885 were null and void, and of no force, for the following reasons: That the board of county commissioners of said county of Ramsey did not, on the first Monday of September, 1885, meet and levy the taxes for the current fiscal year in manner and form as provided by § 35, chapter 28, of the Political Code, nor otherwise, and that in the pretended assessment of taxes was illegally included a pretended road and bridge tax of one mill on the dollar; that the city of Devil's Lake is organized under chapter 24 of the Political Code, and that in said pretended assessment there was a pretended tax levied of seven mills on the dollar claimed to have been levied by the trustees of the city of Devil's Lake for municipal purposes, and claimed to have been certified to the county treasurer as delinquent, and that this tax is wholly illegal and void for the following reasons: The board of trustees of said city did not determine and levy the amount of general tax for the year 1885 in manner and form as required by § 30, chapter 24, of the Political Code, or otherwise; that said board did not prescribe rules and regulations for the assessment of property, as prescribed by § 31 of said chapter, or otherwise; that the assessor for the city of Devil's Lake did not assess said property under the rules and regulations prescribed by the board of trustees of said city, or otherwise, nor did he make return of any assessment roll to said board during said year, as required by said § 31, nor otherwise; that the trustees of said city did not deliver a tax duplicate to the collector of said Ramsey county as provided in § 36 of said chapter, or otherwise, nor did they in any manner delegate to said county collector any authority whatsoever for the collection of said pretended delinquent taxes by sale of real estate or otherwise; that the county assessor of Ramsey county did not personally inspect or examine any of said parcels of land for the purpose of ascertaining the actual character or value of the land, but set the same down in

the assessment roll, in an arbitrary manner, without regard to value, and thereby plaintiff's lots were unfairly and unjustly assessed at a much higher valuation than other lands of the same value in the same locality; that the assessor did not take and subscribe an oath, and annex it to said assessment roll, as provided by § 12, c. 28, Pol. Code, nor did he subscribe and annex to said roll any oath whatever; that the county clerk failed to make and carry out the lists as provided by § 37 of said chapter, or to deliver any duplicate list to the treasurer as prescribed by § 38 of said chapter, or substantially as so required; that the county commissioners did not attach to said list their warrant, under their hands and official seals as provided by § 40 of said chapter, or substantially so; that the treasurer did not publish the tax-sale notice for three consecutive weeks, beginning the first week in September, and did not post such notice upon the court-house door or elsewhere as provided by law. And stating further, that the lands were sold at the tax-sale in 1886 for said pretended taxes, and that unless such sale, and the certificates issued thereon, were canceled and annulled, said Serumgard would issue deeds to said lands, and thereby cast a cloud upon plaintiff's title, and greatly impair the value of the land, and numerous suits concerning the title to said lands will necessarily follow. And relief was prayed accordingly, and an injunction issued. The answer admits the corporate and official capacity of the parties, admits the assessment and levy of the taxes and the sale of the lands, but denies all allegations of omissions and irregularities on the part of the taxing officers and boards. There is a stipulation in the case that the pleadings are to be considered as amended to correspond with the proofs. No amendments were ever, in fact, made under the stipulation; and we must not be expected in another case to give effect to such a stipulation, as the precise issues in a case should be presented to this court in some form other than by way of evidence.

The trial court made 19 findings of fact, nearly all of which are excepted to by defendants as not being supported by the testimony. We will give them, in substance: The *first* finds the title of the lands to be in plaintiff. The *second* finds that the

defendant Serumgard sold the lands at the annual tax-sale in October, 1886, for alleged delinquent taxes of 1885, to the defendant, the New England Investment Company, and that the charge for which said lands were then sold included an alleged tax of 14.4 mills levied by the county commissioners, and an alleged tax of 7 mills claimed to have been levied by the trustees of the city of Devil's Lake, with the penalties and interest. There is an evident mistake as to Serumgard.   The lands were sold by Maher.   Serumgard did not become treasurer of Ramsey county until January, 1887.   The *fourth* finding states that the only levy of taxes made, or attempted to be made, by the county commissioners of Ramsey county, in the year 1885 was on September 7, 1885, and consisted of the following items only: Territorial tax, 2.4 mills; general county tax, 6 mills; county road and bridge tax, 1 mill; interest on county bonds, 2 mills; county special tax, 1 mill; county school tax, 2 mills.   All of which were included in and constituted said levy. *Fifth.* "The assessor of said Ramsey county did not make out and deliver to the county clerk an assessment roll, on or before the first Monday of July, 1885.  The only record evidence of an assessment in said county for the year 1885 is in a book containing certain descriptions of property and values, marked 'Assessor's Book for 1885,' which was written up by one Elmsley, an employe of the county assessor, and completed about July 15, 1885." *Sixth.* "The so-called assessor's book was unverified and unauthenticated by any oath, affidavit, or indorsement of the county assessor of said county, or by any mark or indorsement showing that it was ever delivered to or filed with the county clerk of said county.   The oath attached to said assessor's book was executed by a former county assessor, who resigned and was succeeded by another before said assessor's book was written; and said oath was afterwards, and just prior to the trial of this action, pinned into said book by the clerk of said county, where it now appears." *Seventh.*   The tax-list made by the county clerk did not contain a list of the lots of plaintiff, commencing with the lowest and ending with the highest number, with the amount of tax assessed against each lot, but several of the plaintiff's lots were lumped together in said list; from two to ten being joined

in one item of tax. *Eighth.* The duplicate tax-list was not delivered to the treasurer until November 6, 1885. *Ninth.* The only notice of sale published by the treasurer in 1886 for delinquent taxes of 1885 did not describe the plaintiff's lots in severalty, but lumped them, in groups of two to ten each, opposite one item of tax. *Tenth.* Said notice entirely omitted certain lots that were sold. The *eleventh* finding states that the board of trustees of the city of Devil's Lake did not, on or before the third Tuesday in May, 1885, or at any other time during said year, determine the general amount of tax for that year. The *twelfth* finds that said board did not during said year promulgate any rules for the assessment of property, or the guidance of the assessor. *Thirteenth.* The assessor of said city did not make return of any assessment roll to said board on or before the second Tuesday in June of said year, or on or before the meeting of such board of equalization. The *fourteenth* states that no notice was given that the assessment roll was returned and open for inspection. An assessment roll was made by said assessor without rules or regulations by the board of trustees, but the same was unverified by the oath of the assessor, and subsequently lost or destroyed; and the court was unable to say, from the evidence, whether the same was ever returned to the board of trustees. The *fifteenth* finding states that the city tax of seven mills on the dollar, for which plaintiff's lots were sold, was never levied by the trustees; the only levy for that year being a levy of four mills, made before any assessment or assessment roll was made. The *sixteenth* states that no delinquent tax-list for 1885 was certified by the board of trustees, or other officer of the city of Devil's Lake, to the county treasurer, and said treasurer had no warrant or other authority directing or requiring him to sell plaintiff's lands, or any of them. The other findings do not bear on the issues now involved.

We will review the evidence pertaining to all findings which affect the assessment, levy, and equalization of the taxes, county and city, and those only, because the decision of this case must depend upon the existence or non-existence of a valid tax against plaintiff's property in the year 1885. Respondent attacks the validity of the tax, and the burden is upon him to es-

tablish its invalidity; and it is not enough, for the purposes of this case, that the court may not be able to say from the evidence that the tax is valid. The presumption is that the tax is valid, and this presumption necessarily extends to every act upon which the tax in any measure depends. The court must be able, upon the evidence, to pronounce judgment against its validity. St. Peter's Church v. Scott Co., 12 Minn. 395, (Gil. 280;) Towle v. Holt, 15 N. W. Rep. 203; Miller v. Hurford, 12 N. W. Rep. 832; Stockle v. Silsbee, 41 Mich. 615; Perkins v. Nugent, 45 Mich. 157, 7 N. W. Rep. 757. All the findings of the trial court pertaining to the assessment of the county tax are excepted to as not supported by the evidence. While the record in the case is long and somewhat confused, yet there is absolutely no conflict in the testimony; hence we are not called upon to pass upon any finding that is based upon conflicting evidence. It is true we find in the record instances where witnesses who confessedly had no personal knowledge upon the subjects were allowed to presume or suppose that certain things were done by certain parties at certain times. But in each instance we have the positive and direct testimony of the parties who performed the several acts as to the persons by whom, and times when, such acts were performed; and, as opposed to this positive testimony, we find nothing that rises to the dignity of a conflict. It is simply a question of the correctness of findings upon undisputed testimony. We have given the evidence much consideration, as well, in this case, to distinguish the issues, as to learn the facts; and, quoting as little of the testimony as is compatible with an understanding of our views, we will briefly state what facts are established upon the points that we deem material, as heretofore indicated.

First, as to the county assessment: One Reed was county assessor in 1885. Reed testifies that at the proper time he personally assessed and valued the taxable property of the county, including the property of plaintiff; that in making such assessment he used the ordinary blank for that purpose, giving the name of the owner, with the description and valuation of the property; that after he had thus completed the assessment of all property in the county, and had commenced to transcribe

the same into a book known as the "Assessment Roll," and on the 27th day of June, 1885, he resigned. Prior to his resignation, he deposited with the county clerk the book known as the "Assessment Roll," with a small amount of the assessment transcribed therein, and all of the sheets on which the original assessment had been made; and with said sheets, and intending, as he says, to authenticate them, he deposited an oath, in the exact form prescribed by law, to be attached to the assessment roll proper. All these sheets are in evidence in this case. It also appears that as soon as it could be done after Reed's resignation was filed, and on July 1, 1885, the county commissioners were assembled, Reed's resignation was accepted, and one Ferguson appointed; that the county clerk delivered to Ferguson the assessment sheets deposited by Reed, and Ferguson employed one Elmsley to transcribe the taxes into the assessment roll, and said taxes were so transcribed, exactly as they appeared on the assessment sheets, under the supervision of the assessor, and he testifies to the correctness of the work, and the said roll was completed, and in the hands of the county commissioners, when they sat as a board of equalization. The record shows that the county commissioners met as a board of equalization on July 6th, (Monday,) and held sessions on that day, and on the 7th, 8th, 9th, and 10th. On July 10, 1885, plaintiff, by his agent and attorney, appeared before said board, sitting as a board of equalization, and asked a reduction of the valuation placed upon his said property, which was refused. The county levy was made on Monday, September 7, 1885, substantially as found by the trial court.

Before stating the facts pertaining to the city taxes, we will state our conclusions upon the assessment and levy of the county taxes. The assessment was made by the proper county assessor, and in all respects as required by law. This fact is not questioned, but the contention is that no assessment roll was ever completed or filed as required by law. That the exact requirements of the statute were not met, will be admitted; but were the departures more than irregularities? Could respondent, by any possibility, have been prejudiced thereby? The assessments were made upon the usual and proper forms upon

which tax-payers' statements are entered. Those statements were acurately copied into the roll. Had Reed not resigned. and had the.same statements been copied by the same clerk, and the same roll been placed before the board of equalization, could any objection have been raised thereto save the want of verification? Again, can it be that the caprice of the resignation, or the misfortune of the death, of an assessor, at such a time prior to the first Monday of July in any year so as to render a new assessment by that date an impossibility, must inevitably deprive the state and county of its revenue for that year? We find no authority that would warrant a court of equity in adopting a rule so technical. An unauthorized party had attached to the assessment roll the oath that Reed filed with his assessment sheet. Its presence was without effect, and the roll was unverified. But, under statutes of the same import as ours, it has been repeatedly held that the fact that no oath was attached to or is returned with the roll would not warrant a court of equity in interfering in any manner with the tax proceedings. See on this point Land Co. v. City of Crete, (Neb.) 7 N. W. Rep. 859; Wood v. Helmer, (Neb.) 4 N. W. Rep. 968; Boeck v. Merriam, id. 962; Frost v. Flick, 1 Dak. 131; Challiss v. Commissioners, 15 Kan. 49; Fifield v. Marinette Co., (Wis.) 22 N. W. Rep. 705; Wisconsin Cent. Ry. Co. v. Lincoln Co., (Wis.) 30 N. W. Rep. 619. It also appears that plaintiff filed his petition before the board of equalization, asking to have his assessment reduced. No claim of fraud is made either against the assessment or equalization. Under the authorities, respondent cannot be heard to say in this case that his property was assessed too high, or that the roll was not returned in time to enable him to appear before the board of equalization. Welty, Assessm. § 10; Hutchinson v. Board, (Iowa,) 23 N. W. Rep. 249; Henkle v. Town of Keota, (Iowa,) 27 N. W. Rep. 250; Insurance Co. v. Pollak, 75 Ill. 294; State v. Jersey City, 28 N. J. Law, 500. But counsel for respondent vigorously attacks the levy. It was made at the proper time, by the proper officials, and is clearly correct as to territorial tax, general county fund tax, and interest on bonds. There was also levied a special tax of one mill. The evidence does not clearly disclose the purpose

or object of such levy. The levy of such special tax is author-
ized by statutes under different conditions, which may or
may not have existed. The burden was upon plaintiff, and
the record contains no evidence showing such special levy
to have been illegal or unauthorized. There was also levied,
for "county road and bridge tax, 1 mill." It is objected that no
such tax is known to the law. The law authorizes a road tax of
two mills, and a bridge tax of two mills. What possible injury
could flow from a levy of one mill for both taxes is not appar-
ent to us. This objection, in an equity case, seems hypercritical
in the extreme. Section 1751 of the Compiled Laws directs the
county clerk, in making up the taxes, to levy a tax of two mills
on the dollar for school purposes. It seems the county com-
missioners included this tax in their levy. The finding of the
trial court, however, expressly excludes from the tax for which
plaintiff's lands were sold any school tax other than two mills.
The law would admit of no less, and the point need not be
further considered. No other objection is made to the levy, and
we hold that neither the county assessment nor county levy is
shown to be invalid. We need, therefore, follow the alleged ir-
regularities and omissions no further; for, whatever may be
their character, they can effect only the question of the legality
of the sale, and that question is not, under the authorities here-
inafter cited, properly in the case.

　　The facts relating to the city assessment, in addition to those
stated in the eleventh and twelfth findings, below, were as fol-
lows: One Coolin was the duly elected city assessor of Devil's
Lake in the year 1885. One Ferguson—the same who subse-
quently succeeded Reed as county assessor—purporting to act
as deputy city assessor, made an assessment of the taxable prop-
erty of the city of Devil's Lake, and completed an assessment
roll, and returned it to the city council. The statute requires
that the assessment shall be made by the assessor. There is no
provision in our statutes under which the city assessor of Devil's
Lake could have any authority for the appointment of a deputy.
It is reasonably certain from the evidence that City Assessor
Coolin never adopted the assessment made by Ferguson as his
assessment, or had any knowledge or information concerning it

whatever. The acts of an assessor are certainly of the first importance to the tax-payer; and his acts, while acting as such assessor, are judicial in their character. 1 Desty, Tax'n, 493, 542; Cooley, Tax'n, 551, and cases cited. The tax-payer is entitled to the best judgment of the assessor in fixing the value of his property. Snell v. Fort Dodge, 45 Iowa, 566. And an assessment can only be made by the officer designated by law to make it. Welty, Assessm. § 10, and cases cited. We cannot regard Ferguson as an officer *de facto*, because he was acting under color of no office. There could be no such officer as deputy assessor *de facto*, because there existed no such office *de jure*. 1 Desty, Tax'n, 508, 509; Bailey v. Fisher, 38 Iowa, 229; Norton v. Shelby Co., 118 U. S. 425, 6 Sup. Ct. Rep. 1121. It follows that Ferguson was without authority to make an assessment, and any tax based upon such an assessment was necessarily illegal and void. There existed, then, a valid tax against respondent's property of 14.4 mills, and a claim of a further tax of 7 mills, which was invalid. The county clerk had delivered to the treasurer no duplicate list, as provided by law. The city authorities had failed to certify to the county treasurer a list of delinquent city taxes as provided by law. Said county treasurer, under a notice not properly describing respondent's property, and entirely omitting some portions of it, proceeded to sell said property, and issued certificates of sale, including in one certificate both taxes. This action is brought to cancel such certificates. On the other hand, respondent's lands were not exempt from taxation. The officers who imposed the county tax were fully authorized so to do. The levy is within the limit fixed by law. There is no claim that any officer or board has in any manner acted fraudulently in connection with these tax proceedings. Respondent has never paid, or offered to pay, any taxes whatever on his property for the year 1885. There is no support whatever in the evidence for the claim that these taxes were unjust or inequitable, and there is no such finding. Counsel for appellant urges that, under this state of facts, respondent has no standing in a court of equity—*First*, because he has not brought himself within the rules prescribed by courts of equity upon which they will in any case interfere with tax proceedings

for the purpose of preventing or removing a cloud upon title, and, *second*, that, even if respondent be within the general rule, still he is entitled to no relief because he has failed to do equity, by paying or tendering the amount of taxes properly chargeable against his property.

We find these propositions so often discussed in the same case, and so intimately connected, that we cite the authorities indiscriminately upon the two points. It will be noticed that this is not an action to restrain the collection of a tax. It is an action, brought after tax-sale, to declare the tax void, and cancel the certificates issued thereon. It has been frequently held, however, that the same equitable rules apply in both cases. See City of Lawrence v. Killam, 11 Kan. (2d Ed.) 375; Stebbins v. Challiss, 15 Kan. 55; Wood v. Helmer, (Neb.) 4 N. W. Rep. 968. The general rule pertaining to the interference of equity with tax proceedings is stated by High, Inj. §§ 485, 486, as follows: "It may be laid down as a general rule that equity will not interfere by injunction with the collection of a tax which is alleged to be illegal or void merely because of its illegality, hardship, or irregularity, but there must be some special circumstances attending the threatened injury to distinguish it from a mere trespass, and thus to bring the case within some recognized head of equity jurisprudence; otherwise the person aggrieved will be left to his remedy at law. * * * Nor will equity interfere by injunction with the enforcement or collection of taxes because of irregularities, illegalities, or errors in the assessment of the tax, or in the proceedings incident to its collection, or in the execution of the power conferred upon taxing officers, but in all such cases the tax-payer seeking relief will be left to pursue his remedy at law; and where it does not appear that the established principle of taxation has been violated, or that actual and substantial injustice will result from the operation of the tax, or that it was for an unauthorized purpose, equity will not restrain the execution of a deed of land sold for taxes on the ground that the proceedings were irregular, or even void, in some particulars."

In Michigan the rule is thus stated: "Equity will not interfere to restrain the collection of the public revenue for mere

irregularities. Either it should appear that the property is exempt from taxation, or that the levy is without legal power, or that the persons imposing it were unauthorized, or that they have proceeded fraudulently." Mining Co. v. Auditor General, 37 Mich. 391. In that case it was claimed that the assessment roll was not completed until after the time allowed for review by the supervisors. In Burt v. Wadsworth, 39 Mich. 126, the chairman of the board of supervisors did not sign the certificate of equalization, and no certificate was attached to the tax-roll; and the same rule was announced, and relief refused.

In Illinois the leading case is Railroad Co. v. Frary, 22 Ill. 34. Chief Justice Caton then announced the rule of non-interference by courts of equity in its full scope, and, speaking of the exceptions to the rule, he says: "They are confined almost, if not entirely, to cases where the tax itself is not authorized by law; or, if the tax itself is authorized, it is assessed upon property not subject to the tax." And see Du Page Co. v. Jenks, 65 Ill. 286; Swinney v. Beard, 71 Ill. 27; Nunda v. Crystal Lake, 79 Ill. 314; Trust Co. v. Weber, 96 Ill. 357; Moore v. Wayman, 107 Ill. 192.

In Warden v. Supervisors, 14 Wis. 618, it is said: "It will not be enough to show that the taxes are irregular, or even void. Courts of equity do not sit to remove and correct errors and mistakes of law. To be entitled to their assistance, the party applying therefor must show that he is in danger of losing a substantial right, and that he is in no fault."

In City of Lawrence v. Killam, 11 Kan. 375, the court, by Brewer, J., say: "Where a definite portion of the tax is legal, and the balance illegal, equity will refuse to interfere, unless that which is legal be first paid."

In Challiss v. Commissioners, 15 Kan. 49, it was held that "an injunction will not lie to restrain a tax proceeding without a prior payment or tender of all legal taxes." And in Knox v. Dunn, 22 Kan. 683, the same was held in an action to quiet title as against a tax-certificate holder. And see Pritchard v. Madren, 24 Kan. 486; Wilder v. Cockshutt, 25 Kan. 504; Cartwright v. McFadden, 24 Kan. 662; Miller v. Ziegler, 31 Kan. 420, 2 Pac. Rep. 601.

In Land Co. v. City of Crete (Neb.) 7 N. W. Rep. 859, it is held: "An injunction to restrain the collection of a tax will not be granted unless the tax complained of is either void, or its enforcement decidedly inequitable." And further: " A formal assessment, although not made in the mode contemplated by the law, if not inequitable, will support a levy otherwise legal." In this case it was alleged that no assessment whatever was made of plaintiff's property for the year 1874 as required by law. Instead of valuing the property according to his own judgment of its worth, the city assessor adopted a valuation made by a precinct assessor when assessing under a state law for general revenue, and returned it to the city council as his own valuation, and that this pretended assessment placed an excessive valuation on plaintiff's property, and would thereby cause plaintiff to pay more than his just proportion of taxes, and that said council never sat as a board of equalization, and plaintiff had no opportunity to show that pretended assessment was too high, and that no oath was attached to the assessment roll. Plaintiff's bill was dismissed, with costs. See also, Dundy v. Richardson Co., 8 Neb. 508, 1 N. W. Rep. 565.

Wood v. Helmer, *supra*, was an action brought to cancel tax certificates on the sole ground that the assessment roll was not verified. Plaintiff neither paid, nor offered to pay, the taxes justly chargeable against the land. It was held that there was no equity in the petition, and judgment dismissing it was affirmed; and the court say: "But, if the owner of the land does not wish to take the hazard of an adverse title being made to his land by tax-deed, the legality of which remains undetermined, and files his petition in equity to enjoin the execution of such deed, he must do equity, by paying, or offering to pay, his just proportion of the public burdens." And to precisely the same effect is Boeck v. Merriam, 4 N. W. Rep. 962.

In Morrison v. Hershire, 32 Iowa 271, the court say: "We understand that it is a settled rule in equity that, where a party is in conscience bound to pay a certain sum of money which, together with an amount he is not legally bound to pay, is brought as a legal claim against him, equity will not restrain the collection of the whole unless he pay or offer to pay, by tender, the sum

which he justly and legally owes." And see cases there cited. See, also, Parsons v. Childs, 36 Iowa 108, and Snell v. City of Fort Dodge, 45 Iowa, 564. Harrison v. Haas, 25 Ind. 281, and Roseberry v. Huff, 27 Ind. 12, are strong cases requiring the payment of all just taxes as a condition precedent to any relief at the hands of a court of equity. In the former case, it is said a court of equity "will not so much as lift a finger to remove a cloud while a moral obligation remains undisturbed."

In Frost v. Flick, 1 Dak. 131, the supreme court of the territory of Dakota gave full and emphatic endorsement to the rule of equitable non-interference except in cases where the tax is illegal or unauthorized, or where the property is exempt from taxation, or where fraud has been practiced by the taxing officers.

Clarke v. Ganz, 21 Minn. 387, was an action brought to restrain the collection of a tax on personal property on the ground that it had been illegally assessed. A demurrer to the complaint was sustained. The supreme court declined to consider the question of the legality or illegality of the assessment, holding that, under the equitable rule as laid down in High, Inj., which they quote and approve, equity could not interfere in either case. The court further say: "In some of the states, exceptions have been allowed to this rule. There is so much diversity in the decisons allowing these exceptions that it is hardly profitable to discuss them, especially as none of them have any principle of equity jurisprudence to sustain them." In that case, too, it was alleged that the collector was about to sell plaintiffs' property, "thereby subjecting the plaintiffs to great injury, costs, and expense, and involving them in expensive and vexatious litigation and a multiplicity of suits, in order to keep control of their property, and prevent an unjust sacrifice thereof." Say the court: "This quoted part of the complaint does not state any traversable facts, but only an inference or prediction as to what will be the consequences of the threatened levy. If such statements will make a case for injunction, it can be made in every case." The corresponding allegations in this case are of exactly the same nature, and are fully disposed of by the Minnesota case.

But see on same point Association v. Austin, 46 Cal. 416; Desty, Tax'n, 901, and cases cited.

The rule of non-interference by courts of equity in tax proceedings has been repeatedly recognized and enforced in New York. See cases collected in Susquehanna Bank v. Supervisors, 25 N. Y. 313. In State Railroad Tax Cases, 92 U. S. 575, it is said in the head-notes: "While this court does not lay down any absolute rule limiting the powers of a court of equity in restraining the collection of taxes, it declares that it is essential that every case be brought within some of the recognized rules of equity jurisprudence, and that neither illegality or irregularity in the proceedings, nor error or excess in the valuation, nor the hardship or injustice of the law, provided it be constitutional, nor any grievance which can be remedied by a suit at law, either before or after the payment of a tax, will authorize an injunction against its collection." And again: "No injunction, preliminary or final, can be granted· to stay collection of taxes until it is shown that all the taxes conceded to be due, or which the court can see ought to be paid, or which can be shown to be due by affidavits, have been paid or tendered without demanding a receipt in full." See, also, Dows v. Chicago, 11 Wall. 108; Hannewinkle v. Georgetown, 15 Wall. · 548; Cummings v. Bank, 101 U. S. 153.

Cases may be found holding opinions more or less opposed to the doctrine of the foregoing cases. Upon this subject, Mr. High says: "Upon the other hand, the decisions are neither few in number, nor wanting in respectability, which have inclined to a departure from the doctrine of non-interference in equity with the collection of taxes; and it will be found, as we proceed, that the courts have in many instances extended preventive relief by injunction against the exercise of the taxing power in cases where such relief was unwarranted either upon principle or upon the clear weight of authority." High, Inj. § 484.

Courts of equity should, in general, extend the strong arm of their preventive power to restrain the collection of a tax or annul tax proceedings only where the property sought to be taxed is exempt from taxation or the tax itself. is not war-

ranted by law, or the persons assuming to assess and levy the same are without authority so to do, or where the proper taxing officials have acted fraudulently; and, in addition, plaintiff must bring himself within some recognized rule of equity jurisprudence; and, in the absence of statutory provisions regulating the subject, as a condition to relief in equity, the applicant must pay or tender the amount of taxes properly chargeable against his property. The rule as thus established works the tax-payer no wrong, and preserves the revenues of the state. Injustice could scarcely go further than to permit property which asks and receives the protection of the laws—property which unhesitatingly absorbs the full benefit of the expenditures and improvements made possible by public revenue—to escape its equitable contribution to the public burden because some official, through inefficiency or inadvertance, had failed, in time, manner, or form, in the performance of his duties. It is common knowledge that in a new state, with unsettled and shifting revenue laws, depending for their execution upon parties not familiar with fine distinctions or technical terms, grave mistakes and omissions must be, and are, of frequent occurrence. To depart from this salutary rule of non-interference would necessarily bring financial confusion, if not destruction, upon a large portion of the taxing municipalities within the state, and upon the state itself. We can only make the departure when we are ready to invite the result. In courts of law the rules are wholly different. In possessory actions between the holder of the tax-title and the patent title, where the interests of private parties alone are involved, and where the rule of *caveat emptor* applies in all its strictness, courts of law are scrupulously careful that no man be deprived of his property through tax proceedings that are not in all respects in substantial compliance with the statutory requirements.

Applying the principles hereinbefore enumerated to the facts in this case, we find that the plaintiff has invoked the equity powers of the court by a complaint that shows that a cloud has been cast upon the title to the real estate therein described by the issuance to the defendant corporation, by the treasurer of said county, of tax certificates, upon plaintiff's lands, issued

upon a tax sale based upon a tax in part absolutely void, for the want of an assessment. In the absence of a statute regulating the subject, a court of equity would not grant the relief prayed for by plaintiff until he has paid or tendered the full amount of legal taxes, to-wit: the county taxes of 1885, together with the amount that has accumulated thereon since said taxes became delinquent. But we hold that this case falls within the provisions of § 1643 of the Compiled Laws, and, consequently, in lieu of requiring the plaintiff to pay in money the amount due as a condition of granting the relief prayed, that it was the duty of the trial court, under the evidence, to have entered a judgment against the plaintiff, and in favor of the New England Investment Company, for the sum legally accruing upon the county taxes; that said § 1643 was enacted for the better protection of the public revenue; and that, in a case coming within its provisions, said section is mandatory upon the court, and it becomes its duty to enter up judgment for the amount of the legal tax, and such judgment in no manner depends upon the request of either party to the action. No such judgment was entered in this case by the trial court, but a decree was entered granting the relief prayed for unconditionally. The judgment of the district court was in part proper, but in other respects improper, and hence should be, and is hereby reversed; and the district court is directed to enter such judgment of reversal, and said court is further directed to enter a judgment against the plaintiff as trustee, and in favor of the New England Investment Company, for amount due on the county tax of 1885, said amount to be ascertained by reference, or in such manner as to said court may seem proper. And, in computing said amount, the said county tax, by which we include the entire tax levied by the county commissioners, should be regarded as delinquent and unpaid from and after the first Monday in February, 1886, and the interest and penalties thereon should be computed thereon from that time to the date of such judgment as provided by statute in cases of delinquent taxes. And said court is further directed to enter a judgment canceling the tax certificates in question, and forever enjoining the county treasurer of Ramsey county, and his successors in office, from executing any tax deed or deeds, based

upon said certificates or upon said tax-sale, for the lands in question, or any part thereof; the action to be without costs to either party in either court. Reversed.

WALLIN, J., dissenting.