(61 N. W. Rep. 1025.)

NORTHERN PACIFIC RAILROAD CO. *vs.* SAMUEL K. MCGINNIS.

Opinion filed November 8th, 1894.

**Gross Earnings Law—Void.**

Chapter 99 of the Laws of 1883, commonly known as the "Gross Earnings Law," was repugnant to § 1925 of the Revised Statutes of the United States, and void.

**Railroad Land Taxable.**

The exemption of the plaintiff's land grant thereunder falls with the statute, and such lands are therefore taxable.

**Payment of Gross Earnings Tax Not Bar to Land Tax.**

The payment by the plaintiff of the gross earnings tax under the gross earnings law, and the acceptance of the same by the territory (said payment being made before the admission of North Dakota as a state,) do not bar the right of the different counties in which plaintiff's land grant is situated to levy taxes against such land.

**Non-mineral Land—Title Relates Back.**

Said land grant was not exempt from taxation, because the question of its non-mineral character had not been finally settled.

**Unsurveyed Land—Survey Fees.**

Unsurveyed portions of plaintiff's land grant are exempt from taxation where the survey fees have not been paid, under the rule laid down in *Northern Pac. R. Co.* v. *Traill County*, 115 U. S. 600, 6 Sup. Ct. 201, as the act of congress providing that said land grant shall be taxable despite the nonpayment of survey fees is by its terms declared to be inapplicable to unsurveyed lands.

**Burden on Plaintiff to Show Illegality of Tax.**

Plaintiff cannot avail itself of that provision of this act which excepts lands in unorganized counties, for the reason that it has failed to allege that the lands in question were situated in an unorganized county at the time the taxes were levied. The action being in equity to have tax proceedings annulled, the burden is on plaintiff to show the illegality of which it seeks to avail itself.

**Tax Proceedings Vacated—Judgment for Tax.**

> Certain irregularities *held* fatal to the validity of the tax proceedings, but not the taxes themselves in equity. They are the same as are set forth in the opinion in *Railroad Co.* v. *Barnes*, 2 N. D., at p. 389, *et seq.*, 51 N. W. 386. Judgment is therefore directed to be entered for the amount of such taxes, interest, and penalties, under § 1643, Comp. Laws, and the tax proceedings are set aside.

Appeal from District Court, Stutsman County; *Rose*, J.

Action by the Northern Pacific Railroad Company against Samuel K. McGinnis, county treasurer. From a judgment for plaintiff on the pleadings, defendant appeals.

Reversed.

This action was brought by plaintiff to restrain defendant from selling certain lands held by it under a land grant, part of which were situated in an unsurveyed township, for taxes assessed and levied thereon for territorial, county, and other purposes subsequent to March 9, 1883, on the ground that said taxes were illegal and void, by virtue of an act approved March 9, 1883, which provides that, in lieu of all other taxation upon property of railroad companies, there should thereafter be paid a certain percentage of the gross earnings of such railroad companies.

*E. W. Camp*, and *S. L. Glaspell*, for appellant.

Cited, *Fargo & S. W. Ry. Co.* v. *Brewer*, 3 N. D. 34; *Grandin* v. *LaBar*, 3 N. D. 446; *N. P. R. R. Co.* v. *Raymond*, 5 Dak. 356; *N. P. R. R. Co.* v. *Barnes*, 2 N. D. 310; *N. P. R. R. Co.* v. *Walker*, 47 Fed. Rep. 681; *N. P. R. R. Co.* v. *Wright*, 54 Fed Rep. 67; *N. P. R. R. Co.* v. *Wright*, 51 Fed. Rep. 68; *N. P. R. R. Co.* v. *Clark*, 153 U. S. 252. Also cases cited in respondent's brief in *Ry. Co.* v. *Barnes*, 2 N. D. 316–320.

*Fred M. Dudley, Ball & Watson*, and *J. B. McNamee*, for respondent.

It is not in the power of the state or county officials to extend survey lines and segregate the odd numbered from the even numbered sections nor can such work be performed by the courts.

*Nesselroad* v. *Parrish*, 59 Ia. 570; *Robinson* v. *Forrest*, 29 Cal. 318; *Middleton* v. *Low*, 30 Cal. 596; *Powers* v. *Jackson*, 50 Cal. 429; *Bullock* v. *Rouse*, 22 Pac. Rep. 919; *Neff* v. *Paddock*, 26 Wis. 546, *Climer* v. *Wallace*, 28 Mo. 556; *Cooper* v. *Roberts*, 18 How. 173; *Cragin* v. *Powell*, 128 U. S. 691. The complaint alleges that township 144, in range 68, has never been surveyed by the United States government.

Until the government survey, and the ascertainment of the odd numbered sections, the title vested by the granting act, does not attach to the specific tracts of land. *Kan. Pac. Ry. Co.* v. *Dunmeyer*, 113 U. S. 629; *L. L. & G. R. R. Co.* v. *U. S.*, 92 U. S. 733.

The act of July 2d, 1864 makes a grant *in praesenti.* It vested in the grantee the legal title to the lands *eo instanti* subject to the performance of certain conditions subsequent. To perfect the grant it is necessary to ascertain and determine the particular tracts falling within its terms. *St. P. & P. R. R. Co.* v. *N. P. R. R. Co.*, 139 U. S. 1; *Deseret Salt Co.* v. *Tarpey*, 142 U. S. 241; *U. S.* v. *S. P. R. R. Co.*, 146 U. S. 570; *Curtner* v. *U. S.*, 149 U. S. 662; *Wis. Cent. R. R. Co.* v. *Price Co.*, 133 U. S. 496; *L. L. & G. R. R. Co.* v. *U. S.*, 92 U. S. 733; *Wineman* v. *Gastrell*, 2 U. S. App. 449. The grant so far as each specific tract is concerned remains a float and the title is potential, until the facts necessary to determine if it be granted are settled and known. *Grant* v. *I. R. R. L. Co.*, 7 N. W. Rep. 113; *R. R. Co.* v. *Howard*, 52 Cal. 227; *Veeder* v. *Guppy*, 3 Wis. 502; *Kirby* v. *Lewis*, 39 Fed. Rep. 66; *Wright* v. *Roseberry*, 121 U. S. 488. Until the issuance of patent the lands are undefined as non-mineral lands. *Davis* v. *Wiebbold*, 139 U. S. 507; *Deffebock* v. *Hawke*, 115 U. S. 392; *Ah Yew* v. *Choate*, 24 Cal. 562; *Merrill* v. *Dixon*, 15 Nev. 401; *Alford* v. *Barnum*, 45 Cal. 482; *U. S.* v. *Reed*, 28 Fed. Rep. 482; *Hunt* v. *Steese*, 17 Pac. Rep. 920; *Dughi* v. *Harkins*, 2 L. D. 721. The lands of the government and of its grantee are unsegregated and indistinguishable, the government and the railroad company are tenants in common of the entire tract. *Frasher* v. *O'Connor*, 115 U. S. 102; *Dubuque, etc. R. Co.* v. *Litchfield*, 23 How. 66;

*Griswold* v. *Johnson*, 5 Conn. 363; *Veeder* v. *Guppy*, 3 Wis. 502. The interest of the government in all the lands continues to exist. *Mahoney* v. *Van Winkle*, 21 Cal. 553; *Van Reynegan* v. *Bolton*, 95 U. S. 33. And where the land as an entirety is assessed to one having but an unsegregated or equitable interest therein the sale of the land for such taxes will be enjoined. *Colorado Co.* v. *Commissioners*, 95 U. S. 259. The interest of the government in these lands can only be cut off by the interior department, no other tribunal can determine the non-mineral quality of the land. *R. R. Co.* v. *U. S.*, 34 Fed. Rep. 835; *Chandler* v. *C. H. Min. Co.*, 149 U. S. 79; *U. S.* v. *Jones*, 131 U. S. 1; *R. R. Co. U. S.*, 36 Fed. Rep. 610; *Marquez* v. *Frisbie*, 101 U. S. 473; *Forbes* v. *Driscoll*, 31 N. W. Rep. 633; *Litchfield* v. *Register*, 9 Wall. 575; *Wright* v. *Roseberry*, 121 U. S. 488; *Gaines* v. *Thompson*, 7 Wall. 347. It is only when the government has ceased to hold any such right in the property as to justify it in withholding a patent from the donee or purchaser, that the land will be held liable to taxation as his property. *Wis. Cent. R. Co.* v. *Price Co.*, 133 U. S. 496; *Railroad Co.* v. *Prescott*, 16 Wall. 603. The potential interest of the railroad company is sufficient to maintain an action to protect the property. *U. S.* v. *Ry Co.*, 12 Pac. Rep. 769; *U. S.* v. *Goodwin*, 16 Pac. Rep. 850; *Tarpey* v. *Deseret Salt Co.*, 17 Pac. Rep. 631; *Graff* v. *Ackerman*, 57 N. W. Rep. 512; *Frasher* v. *O'Connor*, 115 U. S. 102; *Dubuque* v. *Litchfield*, 23 How. 66; *N. P. R. Co.* v. *Traill Co.*, 115 U. S. 600; *C. P. R. Co.* v. *Howard*, 52 Cal; 227; *C. R. & M. R. Co.* v. *Woodbury Co.*, 29 Ia. 247; *I. R. R. L. Co.* v. *Storey Co.*, 36 Ia. 48; *Davis* v. *Grey*, 16 Wall. 203; *Heydenfeldt* v. *Daney Gold M. Co.*, 93 U. S. 634. The lands are exempt from taxation because of the lien of the United States, for the costs of surveying the same. *R. R. Co.* v. *Traill Co.*, 115; U. S. 600; *Ry. Co.* v. *McShane*, 22 Wall. 444; *Ry. Co.* v. *Prescott*, 16 Wall. 603; *Colorado Co.* v. *Commissioners*, 95 U. S. 259. The act of 1883 is a sale by the state to the railroad company of the privilege of exempting its land from taxation. This act should be liberally

construed in favor of the railroad company. *Ry. Co.* v. *Board of Supervisors*, 29 Wis. 116; *Ry. Co.* v. *City of Milwaukee*, 34 Wis. 271. The exemption of appellants land grant by the "Gross Earnings Law" does not conflict with the 14th amendment to the Federal constitution. *Bell's Gap. R. R. Co.* v. *Penn.*, 134 U. S. 232; *Home Ins. Co.* v. *New York*, 134 U. S. 594; *Pac. Exp. Co.* v. *Seibert*, 142 U. S. 339; *Pac. Exp. Co.* v. *Seibert*, 44 Fed. Rep. 310; *State Board of Assessors* v. *State*, 24 Am. & Eng. R. R. Cases, 546; *R. R. Co.* v. *Barnes*, 2 N. D. 310. Railroad corporations for purposes of taxation may be classed by themselves. Ky. R. R. Tax Cases, 115 U. S. 321; State R. R. Tax Cases, 92 U. S. 575; *Wis. Cent. R. R. Co.* v. *Taylor Co.*, 8 N. W. Rep. 833; *Francis* v. *R. R. Co.*, 19 Kan. 303; *R. R. Co.* v. *Wright*, 13 S. E. Rep. 578; *R. R. Co.* v. *Humes*, 115 U. S. 512; *R. R. Co.* v. *Beckwith*, 129 U. S. 26. The cases holding that statutes exempting property from taxation do not include in the exemption property not essential to the proper business of the exempted property owner, all turn upon the peculiar reading of the exempting statute. The acceptance of the tax under the gross earnings law, estops the county from questioning the constitutionality thereof. *Daniels* v. *Tearney*, 102 U. S. 415; 1 Story on Contracts, § 610; *Tone* v. *Columbus*, 39 Ohio 281; *State* v. *Mitchell*, 31 Ohio, 592; *Ferguson* v. *Landram*, 1 Bush. 548, 5 Bush. 230; *R. R. Co.* v. *Stewart*, 39 Ia. 267; *Pertyman* v. *Greenville*, 51 Ala. 507; *Ry. Co.* v. *McCarthy*, 96 U. S. 258; *St. Louis* v. *Davidson*, 102 Mo. 169; *State* v. *Milk*, 11 Fed. Rep. 389; *U. S.* v. *Oregon Cent. M. Road Co.*, 41 Fed. Rep. 493; *U. S.* v. *R. R. Co.*, 42 Fed. Rep. 351; *U. S.* v. *R. R. Co.*, 55 Fed. Rep. 711; *U. S.* v. *R. R. Co.*, 54 Fed. Rep. 807; *Philadelphia* v. *Ry. Co.*, 142 Penn. St. 484; *City* v. *Consolodated Coal Co.*, 20 S. W. Rep. 699; *Larrimore Co.* v. *Albany Co.*, 92 U. S. 307; *New Orleans* v. *N. O. Water Works Co.*, 142 U. S. 79; *Williamson* v. *New Jersey*, 130 U. S. 189.

CORLISS, J. The complaint in this action is the same as that in the case of *Railroad Co.* v. *Barnes*, 2 N. D. 310, 51 N. W. 386,

The judgment appealed from was rendered on motion for judgment on the pleadings; but the answer failed to deny any of the material averments of the complaint, and therefore, for the purposes of this decision, all of its allegations must be regarded as true. The action was brought for the same purpose as the case of *Railroad Co.* v. *Barnes, supra.* Some of the questions of law presented are the same as those discussed in that case. On these points further discussion is unnecessary. We will merely state our conclusions.

We hold that the gross earnings law of 1883 was unconstitutional, as being repugnant to section 1925 of the Revised Statutes of the United States, regulating taxation in the Territory of Dakota. We regard this question as not open to debate in this court, for the reason that it is a federal question, and has been passed upon by the United States circuit court for this district, both the circuit judge (Judge Caldwell) and the District Judge (Judge Thomas) being agreed on the point. *Railroad Co.* v. *Walker*, 47 Fed. 681. Judge McConnell, who sits in this case, desires to have it appear that he yields his former view, as expressed in *Railroad Co.* v. *Barnes*, 2 N. D. 310, 51 N. W. 386, to the binding force of this decision of the Federal Court, while still adhering to his previous opinion. The gross earnings act being void, it follows that no exemption of plaintiff's land grant could be claimed under it.

It is urged, however, with great earnestness, that, in view of the fact that the plaintiff has paid its gross earnings tax for the year in which the taxes in question were levied on its land grant, the territory and the counties were estopped from collecting such land taxes. But if, as was held in *Railroad Co.* v. *Walker*, 47 Fed. 681, there was no power in the legislature to exempt this land, it is difficult to see how an estoppel can be built up. If the power of the legislature is restricted, that restriction cannot be removed by the act of state officials in receiving moneys which they have no right to receive, and which the party paying it is under no obligation to pay. The plaintiff, being bound to know the law, was

chargeable with knowledge at the time it made this payment to the state that the legislature was powerless to exempt its land grant in consideration of such payment or for any consideration whatever. It would be a novel doctrine that, after the people had tied the hands of their representatives by inhibitions in the fundamental law, these very representatives could ignore these prohibitions by procuring the co-operation of state officials vested with no such power, but as much subject to the restrictions of the organic law as the representatives themselves. Such officials cannot, by the receipt of money, or by express agreement, or in any other way, infuse life into a void exemption statute. The assessor charged with the duty of assessing the land attempted to be exempted, and taxpayers in the taxing district, have a right to insist that the land shall be taxed, for a law higher than statute law has so decreed. The duty of the assessor to assess, the right of the taxpayer to insist that it shall be assessed, rest upon an authority which transcends legislative authority, and cannot be affected by legislative action, although state officials may lend to this attempted violation of the rights of other taxpayers their unlawful co-operation. If this exemption feature were void only because of the invalidity of that portion of the law which assumes to tax the local earnings on interstate traffic, then there would be much force in this contention of plaintiff; not, however, on the theory of estoppel, but on another theory,—i. e. that of an executed agreement. If the territorial legislature had had power to exempt the plaintiff's land grant,— and we are of the opinion that the only ground on which the exemption could be held void was that a portion of the consideration for the exemption must fail, because the state could not tax the local earnings of interstate traffic,—then it might possibly be urged that, in so far as the plaintiff had in any year voluntarily paid such unenforceable tax on gross earnings, the state, by receiving the same, had acted upon its standing offer to receive the gross earnings tax, and in lieu thereof, exempt the plaintiff's land grant and other property, and therefore had executed for

that year its proposal to exempt for a specific consideration by allowing plaintiff to accept and act upon the same. But, where there is no power to exempt at all, no matter what the consideration is, the receipt of consideration under an offer to receive it in full for all taxes cannot confer such power. That there was no power to exempt the land grant at all was held in the Walker Case, which we follow. The spirit of provisions like that found in section 1925 of the Revised Statutes of the United States is to prevent unfair discrimination in taxation. The right to the protection of such provisions is the right of the taxpayers; and the object of such provisions is to secure such right from invasion, although the combined power of the state essays to override and destroy it. If, in defiance of constitutional restriction, land can be exempted by a statute, followed by the receipt of money under it, then, for the consideration of a dollar, millions of dollars' worth of property may be exempted, and this enormous burden of taxation unjustly thrown upon the other taxpayers in the taxing district. Half the land in the district might thus escape taxation, and the other half be inequitably loaded with a double burden. Protection against unjust discrimination in taxation under such a doctrine would not rest upon the sure foundation of fundamental law, but be granted or withheld at the good pleasure of the law-making power, and of public functionaries.

It is next urged that plaintiff had no such title to that portion of its land grant against which the taxes in question were levied as would render it taxable, for the reason that it has never been determined whether such land is mineral in character. The contention thus made leads inevitably to the conclusion that no portion of plaintiff's vast land grant is taxable until after patent has issued, as the question whether the land has passed under the grant because of its non-mineral character is never definitely settled until the land department has lost jurisdiction by the issue of patent. *Barden* v. *Railroad Co.*, 14 Sup. Ct. 1030. As a result of this doctrine, millions of acres of land to which the plaintiff unquestionably has title might remain untaxable for a quarter of

a century. When once it is determined that a given section is non-mineral, the title to it is not then for the first time vested in the plaintiff. It is elementary that the title relates back to the date of the granting act so far as place lands are concerned (*Wis. Cent. R. Co.* v. *Price Co.*, 133 U. S. 496–509, 10 Sup. Ct. 341;) and it is such lands, and not indemnity lands, that we have to deal with in this case. The title is as much in the plaintiff before this question is settled as after. *Barden* v. *Railroad Co.*, 14 Sup. Ct. 1030; *Salt Co.* v. *Tarply*, 142 U. S. 241, 12 Sup. Ct. 158. There is no allegation in the complaint that the lands are mineral; neither is there an averment that the land department claims that they may be mineral, and is withholding patents on that account. This fact appeared in the complaint in the case of *Railroad Co.* v. *Clark*, 153 U. S. 252, 14 Sup. Ct. 809; and yet the Federal Supreme Court in that case appears to have regarded the question now under discussion as so utterly untenable that it barely touches it in its opinion. The question was necessarily decided; for, had the contention of the plaintiff in that case been well founded, the court must have sustained its bill to enjoin the tax proceedings, as they would have been utterly without foundation. The allegation of the bill in that case was that the "United States and its officers had refused to certify to the company the lands described in the schedule of the bill, but held the list suspended and unapproved, upon the claim that the lands may be mineral in character, and, as such, excepted from the grant of the company." This averment was admitted by the demurrer, and yet the court said: "There is nothing in the allegations of the bill showing affirmatively that the company did not possess the equitable title or ownership in the lands described and assessed." This question is a federal one, and this authority is decisive on the point. Moreover, if the plaintiff has not sufficient title to support the levy of a tax, it is in no shape to question the legality of the tax. There is no claim that is has any more title than it possessed when the tax was levied. If it had no title then, it has none now. It cannot appeal to equity to prevent the casting of a

cloud on land to which it has no title.    If it is ultimately shown that it in fact had no title, because the lands were mineral, it will lose no land by reason of these tax proceedings.    There will be an attempted sale of lands which it does not own.    If the entire title, legal and equitable, is still in the government, the tax proceedings will injure no one except the purchaser, who buys at the sale; and he will buy with knowledge of the fact that the question of title has not been fully settled, and ought, therefore, to take the risk of loss.    We are unable to see why a court of equity should listen to a suitor whose only interest in the matter in litigation, on its own theory, is to save a possible purchaser, who will buy with his eyes open, from being placed in a situation where he may be induced to purchase under state authority land of the United States.    If the plaintiff has title, the land ought to be taxed, and the court should not interfere.    If it has no title, no cloud can be cast upon its property by these tax proceedings, and it, therefore, has no interests to protect.    The case of *Jackson* v. *La Moure Co.*, 1 N. D. 238, 46 N. W. 449, is an express authority against the right to maintain an action to remove a cloud from real estate, or prevent a cloud from being cast thereon, when the plaintiff has no title to the property.

There is a portion of these taxes, however, which cannot be sustained.    One of the townships has never been surveyed. Unsurveyed land is expressly excepted from the provisions of the act of congress passed July 10, 1886, declaring lands granted by congress to railroad corporations taxable, despite the fact that the survey fees have not been.    This act, in terms, excepts from this rule all unsurveyed lands:    "But this provision shall not apply to lands unsurveyed."    As to such lands the rule laid down in *Northern Pac. R. Co.* v. *Traill Co.*, 115 U. S. 600, 6 Sup. Ct. 201, still applies.    This was held in *State* v. *Central Pac. Ry. Co.*, (Nev.) 25 Pac. 442.    In the absence of any authority, we should reach the same conclusion, on the plain meaning of the language used.    The complaint alleges that these survey fees have not been paid.    The land of the plaintiff in the unsurveyed township

was therefore exempt from taxation. It is urged that the doctrine of the Northern Pac. R. Co. Case is applicable to all of the lands in question, for the reason that unorganized counties are excepted from the provions of the act. But there is no evidence that Stutsman County was unorganized at the time the taxes in question were levied. The plaintiff is attacking these tax proceedings. The burden is on it to show their invalidity. *Farrington* v. *Investment Co.,* 1 N. D. 102–109, 45 N. W. 191. If plaintiff intended to claim that this land was exempt, because it was in an unorganized county, it should have alleged the fact that Stutsman County was unorganized. Mere failure to pay survey fees would not exempt plaintiff's land grant, unless it was in an unorganized county. The latter fact was essential to bring the case within the rule laid down in the Northern Pac. R. Co. Case. Having failed to allege it, we cannot presume it to destroy a tax, the burden of overthrowing which plaintiff has assumed by this action. The only questions remaining relate to irregularities in the tax proceedings. They are the same as those discussed in *Railroad Co.* v. *Barnes,* 2 N. D. 310–389, 51 N. W. 386, and further reference to them in this opinion is therefore unnecessary. We hold, on the reasoning of my opinion in that case, that these irregularities do not affect the validity in equity of the taxes levied. In the absence of any statute changing the equitable rule, the plaintiff would be defeated for failure to pay or tender such taxes before commencing this action. But our statute substitutes a judgment for payment or tender. *Railroad Co.* v. *Barnes,* 2 N. D. 310–394, 51 N. W. 386; *Farrington* v. *Investment Co.,* 1 N. D. 102, 45 N. W. 191. The plaintiff, therefore, had a right to institute this suit to restrain these irregalar tax proceedings, as they would have culminated in tax deeds which, under the statute, would have cast a cloud on plaintiff's title, such deeds being made by statute *prima facie* evidence of the regularity of all prior proceedings. The deeds, because of these irregularities, would have been void, and yet their introduction in evidence

would have established *prima facie* title in the grantees thereunder, without proof of the regularity of the antecedent proceedings. The District Court erred in failing to render judgment upon the complaint, as it stood, against the plaintiff for the amount of the taxes levied, with penalty and interest.

The judgment of the District Court is therefore reversed. The plaintiff is allowed 20 days after the filing of the remittitur in which to apply to the District Court for leave to amend the complaint. Whether such amendment shall be allowed will rest in the sound discretion of that court. If no amendment is allowed, the court is directed to render judgment against the plaintiff for the amount of the taxes, penalties, and interest, according to our decision in the Farrington Case; but the taxes levied against the plaintiff's land in the unsurveyed townships will not be included in said judgment, such taxes being void, for the reason already stated. The judgment will also set aside the tax proceedings, according to the decision in the Farrington Case. All concur.

BARTHOLOMEW, C. J., and WALLIN, J., having been of counsel, took no part in the above case; McCONNELL, J., of the Third Judicial District, and MORGAN, J., of the Second Judicial District, sitting in their places by request.