THOMAS A. JACKSON, Plaintiff and Appellant, *v.* LA MOURE COUNTY, Defendant and Respondent.

**1.  Title to Northern Pacific Indemnity Lands.**

   Title to the indemnity lands in the grant to the Northern Pacific Railroad Company does not pass from the United States until the selection of such lands by the company with the approval of the secretary of the interior.   Until such approval such lands are not subject to taxation.

**2.  Action to Remove Cloud Brought by One Having no Title.**

   One in possession of real estate, but having no legal or equitable title thereto, cannot maintain an action to remove a cloud upon the title.

(Opinion Filed September 2, 1890.)

*A*PPEAL from district court, Stutsman county; Hon. RODERICK ROSE, Judge.

*C. W. Davis*, for appellant, *N. B. Wilkinson*, for respondent.

CORLISS, C. J.   The tax proceedings to enjoin which this action was instituted were clearly void.   The land attempted to be taxed was not subject to taxation. It was property of the United States.   Van Brocklin v. Anderson, 117 U. S. 151, 6 Sup. Ct. Rep. 670; Tucker v. Ferguson, 22 Wall. 527.   The exemption of such property from taxation by the states rests upon the doctrine that there must inhere in every government the power to perpetuate itself.   The supremacy of the federal government could be annihilated by hostile taxation by the states of federal agencies and property.   With respect to property, the power to tax, save as limited by constitutional inhibition, acknowledges no restraint.   All federal agencies and property might be thus transferred to the coffers of the states, were they subject to taxation.   The land in question was embraced within the territory of the indemnity lands of the Northern Pacific Railroad Company, and was such land as the company might, under its grant, select to make good its losses of land within the "place" limits by reason of prior settlement, or for any reason.   It is, however, averred in the complaint, and admitted by the demurrer, that the company has never made the selection of the

land in question, or of any part thereof, and that the United States still holds the legal title to the land. Under these facts the property was not subject to taxation. Wisconsin Cent. R. Co. v. Price Co., 10 Sup. Ct. Rep. 341. Even selection by the company, without the approval of the secretary of the interior, would not have divested the government of its title to the land. It was so held in the case cited. The company in that case had, in fact, made selections of the lands sought to be taxed, but the secretary had refused to approve the selection, insisting that the company was not entitled to such lands, claiming that it had already secured more than it could rightfully hold under the grant. The secretary was in error. The company was in fact entitled to as much indemnity lands as it had selected. But the supreme court held that, as the secretary had refused to approve the selection, no title whatever had passed, and the lands were not therefore taxable, notwithstanding the fact that the secretary's refusal was unjustifiable.

The soundness of this decision cannot be assailed. There is a well-defined difference between "indemnity" lands and "place" lands. The latter become instantly fixed by the adoption of the line of the road. The odd-numbered sections to the amount of twenty sections a mile on each side of the road were granted to the Northern Pacific Railroad Company by the act of congress. The language of the grant is that there be and "are hereby granted." The moment the route of the railroad had been deffinitely established these sections were susceptible of identification, and *eo instanti*, the grant attached to them, the translation of title dating back to the date of the grant: Wisconsin Cent. R. R. Co. v. Price Co., 10 Sup. Ct. Rep. 341; Railway Co. v. Baldwin, 103 U. S. 426; Barney v. Railroad Co., 117 U. S. 228, 6 Sup. Ct. Rep. 654; Denny v. Dodson, 32 Fed. Rep. 899; Railroad Co. v. Majors, 2 Pac. Rep. 322. But the indemnity lands cannot be ascertained by the mere location of the road. They are substitutes for granted lands lost, and it is therefore important that the fact of such loss from the attaching superior pre-emption or other rights to any portion of the "place" lands should be ascertained by the interior department before allowing the company to make selection for indemnity;

and it is also necessary for that department to determine whether the lands which the company desires to select for indemnity are open to selection; whether there is not some prior claim upon them in behalf of settlers or others. It is therefore entirely proper that the secretary of the interior should have the right to approve or disapprove of the selection before it becomes final. This is clearly the meaning of the provision of the grant to the Northern Pacific, which declares that the indemnity lands shall be selected by the company "under the direction of the secretary of the interior." 13 St. U. S. c. 217, p. 365, § 3; Elling v. Thexton, 16 Pac. Rep. 931; St. Paul, etc., R. Co. v. Winona, etc., R. Co., 112 U. S. 720, 5 Sup. Ct. Rep. 334. The statute must have the same construction that would be given it if the word "approval" had been used in place of the word "direction." The title to the indemnity lands does not pass until the selection has been made. Ryan v. Railroad Co., 99 U. S. 382; St. Paul, etc., Railroad Co. v. Winona, etc., Railroad Co., 112 U. S. 720, 5 Sup. Ct. Rep. 334; Barney v. Railroad Co., 117 U. S. 228, 6 Sup. Ct. Rep. 654; Sioux City, etc., R. Co. v. Chicago, etc., R. Co., 117 U. S. 406, 6 Sup. Ct. Rep. 790; Wisconsin Cent. R. Co. v. Price Co., 10 Sup. Ct. Rep. 341. Under this last decision the approval of the secretary of the interior is essential to selection. Without it there is no selection in fact. In the language of the opinion in that case, "until the selections were approved there were no selections in fact, only preliminary proceedings taken for that purpose, and the indemnity lands remained unaffected in the title." The same facts which show that the land was exempt from taxation are fatal to the plaintiff's right to maintain this action. The title never having passed from the government, the railway company had none to convey. Plaintiff does not pretend that he has any title except in so far as § 5 of the act of congress, approved March 3, 1887, (24 St. 556,) may confer upon him some kind of title. That section provides, in substance, that the purchaser of such land from the company, having failed to secure any title because the company had none to transfer, may make payment to the United States for such land at the ordinary government price for like lands, and thereupon a pat-

ent shall issue to him. This statute certainly does not confer upon him the legal title to the land. That still remains in the United States. Nor is it easy to perceive how the statute can be said to vest in the plaintiff an equitable title to the land. He is a mere settler, with a right to purchase on making a certain payment. It is not pretended that that payment had been made at the time this action was commenced. The plaintiff then had neither a patent nor a right to a patent. He was not in possession under a contract binding the owner of the land to convey to him the legal title. The government had not obligated itself to make such conveyance. It had granted to the plaintiff a concession which it could at any time withdraw. Whatever privilege he held under this act, the government was under no obligation, moral or legal, to continue to respect. He was the recipient of an indulgence—a favor; but in no sense could he claim to be the owner of any right enforceable in a court of law or equity. The vendee in a contract for the sale of real estate is, in equity, regarded as the owner, and is therefore said to hold the equitable title because he can compel the vendor to perform his contract. There rests upon the vendor an obligation to perform it which equity will enforce. The plaintiff in this case occupies no such position. He has a mere privilege. If he avails himself of it by the payment of money, he will then become the owner of the equitable title to the land, and possibly secure a standing in equity to remove a cloud upon his equitable interest. But we do not decide whether an equitable title is sufficient to warrant the maintenance of an action to remove a cloud therefrom. There is certainly authority for such a doctrine. See Hart v. Bloomfield, (Miss.) 5 South. Rep. 620; Slaon v. Sloan, (Fla.) id. 603; 3 Pom. Eq. Jur. § 1399, note 4; Bryan v. Winburn, 43 Ark. 28; Lamb v. Farrell, 21 Fed. Rep. 5; Emery v. Cochran, 82 Ill. 65; Langdon v. Templeton, 17 Atl. Rep. 839. On the other hand there is much which inclines to the more strict rule which requires a legal title to support such an action. See Frost v. Spitley, 121 U. S. 552, 7 Sup. Ct. Rep. 1129; Thomas v. White, 2 Ohio St. 548; Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. Rep. 495.

It is further insisted that under the decisions in Railroad Co.

v. Rockne, 115 U. S. 600, 6 Sup. Ct. Rep. 201, and Wisconsin Cent. R. Co. v. Price Co., 10 Sup. Ct. Rep. 341, the railroad company could have maintained this action had it not executed a deed of the property to the plaintiff, and that therefore the plaintiff can maintain the action because he has succeeded to the interest of the company in the property. In the case of Wisconsin Cent. R. Co. v. Price Co., it appeared that the plaintiff, at the time of instituting its action to set aside the tax-proceeding, was the owner of the legal title, although, when the tax proceedings were initiated, such title was still in the state in trust. The land grant-of the plaintiff in that case was made by the United States to the state in trust, and, intermediate the levy of the tax and the commencement of the action to annul the tax proceedings, the state executed to the plaintiff a patent for the land in question. This patent was by a state statute *prima facie* evidence of title in the grantee, and the trial court found as a fact that the plaintiff was the owner of the legal title, and this finding was in no manner challenged. The fact, therefore, was undisputed that the plaintiff, when the suit was brought, was the absolute owner in fee of the land over which the cloud rested. In the Rockne Case, the court held, not that the legal title was in the railroad, but that the interest of the company, whether legal or equitable, was subject to a lien in favor of the United States for the unpaid survey fee, and that therefore the land was exempt from taxation by the state; that the tax proceedings, if valid, might result in the destruction of this lien by a sale of the absolute title should the taxes remain unpaid. It is apparent in this case that the court regarded the interest of the company in the land as equivalent at least to an equitable title. Said the court on this point: "The government was as to those costs in the position of a trustee in a conveyance to secure the payment of money." And in Denny v. Dodson, 32 Fed. Rep. 899 Mr. Justice Field, speaking of the statute giving this lien, and of the decision in the Rockne Case, says: "The law was therefore, in effect, an assertion of a lien upon the title papers, and upon the lands, for expenses necessarily incurred for their identification and survey, and in the preparation of conveyances by the government; and the decision of the court

[*i. e.*, the Rockne Case] was, in substance, that such a lien would not be made available against any taxation or sales thereunder. Notwithstanding the expression referred to, it is not believed that the court intended to hold that a legal title to the lands had not passed by the grant to the company, and thus overrule or qualify a long line of decisions announced after the most mature consideration, and discredit the security which, only a few weeks before, congress had authorized by mortgage on the lands to raise funds to construct the road, but only to declare that the power of disposition by the grantee was stayed by the government until the payment of the costs mentioned was made, and the right of the government to enforce such payment could not be defeated by the tax laws of the territory." It thus appears that in the Rockne Case the plaintiff was the owner of at least the equitable title to the land, and, in the other case, of the fee simple, when the suit to remove the cloud was instituted. The cases are not, therefore, in point.

We hold that the tax proceedings are void under the allegations of the complaint, but that the plaintiff has no such interest in the property as entitles him to maintain this action. The order and judgment of the district court sustaining the demurrer are therefore affimed. All concur.

BARTHOLOMEW, J., having been of counsel, did not sit upon the hearing of the above case, nor participate in the decision herein given.