(74 N. W. Rep. 194.)

---

## WELLS COUNTY *vs.* E. H. McHENRY, *et al.*

Opinion filed January 31st, 1898.

### Railroad Land Grant—Taxation.

The decision of this court in *Jackson* v. *La Moure Co.*, 46 N. W. Rep. 449, 1 N. D. 238, and *Grandin* v. *La Bar*, 57 N. W. Rep. 241, 3 N. D. 446, followed on the question of the taxability of indemnity lands of the Northern Pacific Railroad Company before the selection thereof has been approved by the secretary of the interior. Before that time such lands are not taxable.

### Place Lands When Taxable.

Place lands are taxable after they have been surveyed in the field, although the plat of survey has not yet been filed in the local land office; the survey made being thereafter approved as made, and the plat thereof being duly filed in such office.

### Failure of Equalization Board to Meet—Effect.

In a proceeding to obtain a tax judgment under Ch. 67 of the Laws of 1897, the failure of the county board of equalization to meet at all is not fatal to the tax, for the reason that the act gives the taxpayer a full hearing, in the very proceeding to enforce the tax, as to the fairness of the assessment and the justice of the tax, and confers upon the court the power to reduce the tax if, on such hearing, it appears that the land has been partially, unfairly, or unequally assessed.

### Curative Legislation.

So far as matters of form are concerned, that act is a curative law in all cases in which the defects in the tax proceeding have not prejudiced the taxpayer.

### Assessment and Levy of Tax—Vital.

When, however, there is no assessment or levy, no tax judgment can be rendered. The act does not vest in the courts the power to assess property or levy taxes, but merely provides the machinery for enforcing and sustaining taxes.

**Illegal Levy.**

> The taxes for 1890, having been assessed by percentages instead of in specific amounts, as required by the act of 1890, are void, and, no tax judgments thereon can be rendered in this proceeding.
>
> BARTHOLOMEW, J., dissenting.

**Items of Levy—Miscellaneous Expenses.**

> It will not defeat a tax that one of the items of levy of taxes for general county purposes was stated to be "miscellaneous expenses."

**No Limitation of Action to Foreclose Tax Lien.**

> A tax lien on real estate being declared to be perpetual, no lapse of time will bar a remedy to enforce such lien against the land. It follows that no limitation statute can be invoked as a defense to a proceeding, under the law of 1897, to foreclose a tax lien.

**Penalties and Interest.**

> Certain questions decided relating to penalties and interest on taxes levied prior to the act of 1890, and also on taxes levied subsequently to that act, but prior to the time when the Rev. Codes took effect.

**Taxes of Land Grant Void.**

> Following the decision of the Federal Supreme Court in *McHenry* v. *Alford*, (decided January 3, 1898, and not yet officially reported) 18 Sup. Ct. Rep. 242, *held*, that the taxes against the land grant of the Northern Pacific Railroad Company, assessed in 1887 and 1888, are illegal, and hence that no tax judgments therefor can be rendered.

Proceeding by Wells County against Edwin H. McHenry and Frank G. Bigelow, as receivers of the Northern Pacific Railroad Company, to enforce payment of taxes. A judgment was rendered for plaintiff. Certain questions are certified here by the trial court; *Glaspel*, J.

Judgment modified.

*J. E. Robinson* and *J. J. Youngblood*, for plaintiff.

*Ball, Watson & Maclay, James B. Kerr* and *J. B. McNamee*, for defendants.

Section 9, Ch. 67, Laws 1897 is substantially the same as § 1588, Rev. Stats. Minn. 1894. The Minnesota adjudications upon this law declare that its purpose is to cut off technical defenses which do not go to the merits. *Commissioners* v. *Nettleton*, 22 Minn. 356; *State* v. *Certain Lands*, 42 N. W. Rep. 474; *County* v. *Bachelder*, 50

N. W. Rep. 536. Until there is an assessment there can be no tax —and until there is a levy there is no tax. *Township* v. *Rose*, 53 N. W. Rep. 927; *Powers* v. *Larabee*, 2 N. D. 155, 49 N. W. Rep. 728; *Swenson* v. *Greenland*, 4 N. D. 532, 62 N. W. Rep. 603; *O'Neil* v. *Tyler*, 3 N. D. 47, 53 N. W. Rep. 434. The levy of taxes is not a judicial function it is exclusively legislative. *State Railroad Cases*, 92 U. S. 575; *Heine* v. *Levee Commissioners*, 19 Wall. 660; *Marsh* v. *Supervisors*, 42 Wis. 502. Under the constitution the assessment is jurisdictional. In no other way can taxes be collected upon property by uniform rule. *Philleo* v. *Hiles*, 42 Wis. 527; *Plumer* v. *Supervisors*, 50 N. W. Rep. 416; *Adams* v. *Tonella*, 14 So. Rep. 17; *Bank* v. *Hins*, 3 Ohio St. 15. Proceedings to enforce taxes for 1890, and prior years are barred by the statute of limitations § 5199, 5201, 5208, Rev. Codes. A tax is a "liability created by statute" within the terms of the code. *State* v. *Certain Lands*, 42 N. W. Rep. 473; *San Francisco* v. *Jones*, 20 Fed. Rep. 188; *San Francisco* v. *Linning*, 15 Pac. Rep. 311; *State* v. *Mining Co.*, 14 Nev. 226; *Forster* v. *Railroad Co.*, 23 Pa. St. 371; *Pine County* v. *Lambert*, 57 Minn. 203. Taxes cannot be levied in any other manner than that designated by law. 1 Desty 467; *Warren County* v. *Klein*, 51 Miss. 807. A tax levied in any other manner is void. *State* v. *Shreveport*, 33 La. Ann. 1179; *Miller* v. *Corbin*, 46 Ia. 150; *Mix* v. *People*, 72 Ill. 241; *Marion County* v. *Barker*, 25 Kan. 258. The levy being void it was not the intent of the law of 1897 to validate the same. *Prindle* v. *Campbell*, 9 Minn. 212; *Weller* v. *St. Paul*, 5 Minn. 95. Evidence of the auditor was competent to show that it appeared from the record that the taxes for the year 1890 were not based upon an itemized statement of the county expenses. *Maxwell* v. *Paine*, 18 N. W. Rep. 546. The statute is mandatory requiring the commissioners to make itemized statement of the county expenses and the same should show of record *Shattuck* v. *Smith*, 6 N. D. 56; Cooley Taxation, 339. Statutes requiring a record are mandatory and must be strictly complied with. *Perry Co.* v. *Selma Ry. Co.*, 65 Ala. 391; *State* v. *Warford*, 32 N. J. L. 207; *Paldi* v. *Paldi*, 84

Mich. 346. Every proceeding in the course of a levy of taxes must appear in some written and permanent form in the record of the bodies authorized to act upon them. *Moser* v. *White*, 29 Mich. 59; Appeal of Powers, 29 Mich. 504; *Doe* v. *McQuilkin*, 8 Blackf. 335; 2 Desty, 1066. The failure of the board of equalization to meet was fatal to the tax. *Auditor General* v. *Reynolds*, 47 N. W. Rep. 442. *Power* v. *Larabee*, 49 N. W. Rep. 724; *Prindle* v. *Campbell*, 9 Minn. 212. A tax law manifestly intended to embrace and include all legislation on that subject, will repeal all provision of former laws not re-enacted in it. *Baer* v. *Choir*, 36 Pac. Rep. 286; Cooley on Taxation, 295; 1 Desty, 105; *Fox* v. *Com.*, 16 Grat. 1; *Merserean* v. *Merserean Co.*, 26 At. Rep. 682; Suth. on St. Cr. 154; *Com.* v. *Standard Oil Co.*, 101 Pa. St. 119–150; *Belvidere* v. *R. R. Co.*, 34 N. J. L. 193. A statute providing that unpaid taxes after a certain date shall bear a certain rate of interest has no application to taxes assessed and levied before the act took effect. 2 Desty, 765; *Peo.* v. *Thatcher*, 95 Ill. 109; *Peo.* v. *Peacock*, 98 Ill. 172. A statute prescribing a penalty can not operate retrospectively. 1 Desty 104; *Fuller* v. *Grand Rapids*, 40 Mich. 396; *Clark* v. *Hall*, 19 Mich. 356. The odd numbered sections were not taxable for the year 1892. The official plats of survey were not filed in the land office until after the levy for that year, although the survey was made before the assessment. The survey fees had not been paid. 5 Copps Land Owner, 5; *U. S.* v. *Curtner*, 38 Fed. Rep. 1; *Barnard* v. *Ashley*, 18 How. 43; *Frasher* v. *O'Connor*, 115 U. S. 102; *McCreary* v. *Haskell*, 119 U. S. 327.

CORLISS, C. J. The record in this proceeding is certified to us by the District Court without an appeal, under the provisions of § 10, Ch. 67, Laws 1897. The proper steps having been taken under this statute to obtain tax judgments against lands owned by the Northern Pacific Railroad Company, the defendants, who are receivers of such company, filed their answers setting up various defenses, which will be more specifically referred to as the points certified to us for decision are severally discussed.

Some of the lands are indemity lands. They were selected by the company, in manner and form as prescribed by the secretary of the interior, prior to the levy of the taxes in question. But it appears that the selection was not approved by the secretary of the interior until May 25, 1896. While the facts of this case are different from the facts in *Jackson* v. *LaMoure Co.*, 1 N. D. 238, 46 N. W. Rep. 449, and *Grandin* v. *La Bar*, 3 N. D. 446, 57 N. W. Rep. 241, in that the selection has, in the case at bar, finally been approved, yet the principle of those cases must govern this. The groundwork of those decisions was that an approval of the secretary of the interior was necessary to vest in the company title of any kind, either legal or equitable. If such approval is the act which transfers the title, it is evident that it is immaterial whether the approval be absolutely refused or withheld or subsequently given. In all cases, whatever action the secretary of the interior takes, the whole title to the property, legal and equitable, remains in the government until he has passed upon the various questions which must be settled before it can be known whether such selection should be assented to by the government or modified or wholly disapproved. When we construed the words, "under the direction of the secretary of the interior," in the act containing the grant of the Northern Pacific Railroad Company, as equivalent to the language used in the Price County Case, 133 U. S. 496, 10 Sup. Ct. 341, we took ground which made it necessary for us to hold, under the ruling of the Federal Supreme Court in that case, that the Northern Pacific Railroad Company is, as to indemnity lands selected by it, a stranger to the title, and has no taxable interest therein until such selection is approved. The fact that the secretary of the interior has approved the selection, made in 1886, of the land in this case taxed as indemnity land, does not give the company, as of the date of such selection, any greater right therein than it would have had if the approval had been withheld. Unlike place lands, the title to indemnity lands does not vest in the company as of the date of the act of congress containing the grant, but only from the time of the selection

thereof; and until the selection is approved there is no selection in fact, but only preliminary steps, which may or may not result in a selection, according to the subsequent action which the proper representative of the government may take in the matter of such selection. This is the explicit declaration of the Federal Supreme Court in the Price County case, and, so long as the opinion in that case stands unmodified, we consider it our duty to hold that until approval no title whatever to indemnity lands vests in the Northern Pacific Railroad Company. In the Price County case the court said that, "until the selections were approved, there were no selections in fact, only preliminary proceedings taken for that purpose, and the indemnity lands remained unaffected in their title." It follows that we must answer in the negative the following question certified to us by the District Court: "Should not judgment be given against indemnity lands for all taxes charged against the same, with interest and penalty as provided by law?"

It is urged that some of the lands within the place limits were not surveyed until after the taxes for the year 1892 had been levied, and that, therefore, such taxes are illegal, so far as they effect such lands. The basis of this claim is the fact that while the survey in the field antidated the assessing and levying of the taxes, yet the plat of the survey was not filed in the land office until after such levy had been made. Counsel for the receivers cite in this connection the following cases: *U. S.* v. *Curtner*, 38 Fed. Rep. 1; *Frasher* v. *O'Connor*, 115 U. S. 102, 5 Sup. Ct. 1141; *McCreery* v. *Haskell*, 119 U. S. 327, 7 Sup. Ct. 176; *Barnard* v. *Ashley*, 18 How. 43; and also the ruling of Secretary Schurz in the case of *In re Foster*, 5 Copp, Landowner, 5. They insist that these decisions establish the rule that a survey is not complete until after the plat is filed in the proper office. As we regard the matter, these cases have no bearing on the point now under discussion. It is undisputed that the survey as made in the field was the survey which was in fact approved, and that the plat which was subsequently filed was in fact the plat of such survey. The

lands being within the place limits, the grant, as soon as it attached on the filing of the plat (assuming that it did not attach before,) related back to the date of the act containing the grant to the Northern Pacific Railroad Company. The grant as to place lands is a grant in *præsenti*, and when it attaches it becomes a grant of the land from the very day the act took effect. See *Jackson* v. *La Moure Co.*, 1 N. D. 238, 46 N. W. Rep. 449, and cases cited. It therefore appears in this case that the company was the owner of land when it was assessed and when the tax was levied. Such land having been at that time surveyed in the field, the assessor could value it, for its boundaries were then established just as they now exist and ever since have existed.

But it is insisted that this land was not taxable because the survey fees had not been paid. In this connection counsel for the receivers cite the Rockne Case, 115 U. S. 600, 6 Sup. Ct. 201. The act of Congress which modified the rule laid down in that case was qualified by the proviso that it should not apply to unsurveyed lands. If these lands were at the time they were assessed unsurveyed, within the meaning of that statute, it is clear that they could not be taxed. *Railroad Co.* v. *McGinnis*, 4 N. D. 494, 61 N. W. Rep. 1032. The cases cited throw no light upon the question as to the meaning of the word "unsurveyed" as used in the act of 1886. That statute had for its object the abrogation of an unjust rule that the railroad company could, under the guise of protecting the lien of the government (and to protect such lien no such ruling was necessary,) interpose as a defense to state taxation its own failure to discharge its obligation to the federal government. The extraordinary spectacle was presented of a recipient of governmental bounty escaping one just obligation to the state because it had failed to discharge another obligation to the general government. The statute, passed to wipe out such an inequitable rule, should be given a liberal construction,—one which will carry out the purpose of congress to compel the company to pay taxes when they are justly due. On this ground we hold that the lands mentioned were not surveyed lands, within

the meaning of the proviso embodied in the act of 1886, after they had been surveyed in the field, althought the plat of such survey had not at that time been filed. Such plat was in fact filed, and the survey as made was approved, without alteration. The objection is highly technical, and we do not deem it consonant with the spirit of the act of congress already referred to, to sustain such objection. We therefore answer in the affirmative the following question certified to us by the District Court: "Were the odd-numbered sections in township 145 of ranges 71, 72, and 73 taxable for the year 1892, although the final plat of the survey was not filed in the United States land office until August 8, 1892, the levy of the county taxes having been made on July 15, 1892, and although the survey fees were not paid until May 27, 1892, it being conceded that the lands were surveyed in the field prior to said levy?"

One of the defenses is that the taxes levied in the year 1889 are void because the county board of equalization failed to meet as required by law, and our decision in *Power* v. *Larabee*, 3 N. D. 502, 57 N. W. Rep. 789, is cited to support the claim that this omission rendered illegal the entire tax levied for that year. The ground of this contention is the denial of the citizen's constitutional right to a hearing on the question of valuation. We do not wish to qualify anything said by this court in that case. A hearing is vital in tax proceedings based on valution. In *Power* v. *Larabee*, no hearing in court was granted by statute. In this respect that case differs from the case at bar. The legislature having designated a certain tribunal to pass on the question of just apportionment of the tax on the basis of value, we held that no court had authority to exercise such a function. This must be the law, for it is not one of the inherent powers of a court of justice to participate in any way in the levy of a tax. Such power is usually lodged in administering officers and boards. In the absence of statutory permission, no court has jurisdiction to review the action of an assessing officer in the valuation of property for purposes of taxation, where the only claim is that the

assessing officer erred in judgment as to such valuation. Of course, in case of fraud, a different question would be presented. But we are not aware of any principle of law which prevents the legislature from vesting in the ordinary courts of justice the duty of revising the action of assessors whenever their valuation of property is challenged by the citizen, or even the power to act as equalizing boards before which all assessments shall be brought for revision prior to their becoming final. We doubt the expediency of any legislation which should vest all the powers of boards of equalization in the ordinary judicial tribunals. Local boards are better qualified to exercise such functions. And the imposition of such burden upon the courts would seriously impair their efficiency in the discharge of those duties which are germane to the judicial branch of the government. These considerations, however, are for the legislature. With them the courts have naught to do. The question with which the judicial tribunals have to deal is one of power, and not of sound statesmanship.

We must now turn our attention to the statute, which it is urged satisfies the demand of the organic law that the citizen should be afforded an opportunity for a hearing before the value of his property, as the basis of the apportionment of a tax, shall be finally fixed. The act of 1897, providing the machinery for transmuting taxes into tax judgments, contains a curative feature as to past taxes. The effect of this law with respect to taxes thereafter assessed, we need not now stop to consider, as no such taxes are before us. Section 9 of this act (Ch. 67, Laws 1897,) provides as follows: "If all the provisions of the law in force at the time of such assessment and levy in relation to the assessment and levy of taxes, shall have been complied with, of which the list so filed with the clerk shall be *prima facie* evidence, then judgment shall be rendered for such taxes and the interest, penalties and costs. But no omission of any of the things provided by law in relation to such assessment and levy or of anything required by an officer or officers to be done prior to the filing of the list with the clerk shall be a defense or objection to

the taxes appearing on any piece or parcel of land; unless it be also made to appear to the court that such omission resulted to the prejudice of the party objecting, or that the taxes against such piece or parcel of land have been partially, unfairly or unequally assessed; and, in such cases, but in no other, the court may reduce the amount of taxes upon such piece or parcel and give judgment accordingly. It shall always be a defense in such proceedings, when made to appear by answer and proof, that the taxes have been paid, or that the property is lawfully exempt from taxation." In construing this section we must not lose sight of the fundamental fact that it speaks of taxes, and that the object of this enactment is to provide the necessary machinery for putting a tax claim in judgment. A lien is to be fastened upon the land of a citizen by a tax judgment,—not for money loaned to the citizen by the public or on account of a breach of contract or the commission of a tort, but for a tax. The basis of the proceeding authorized by the statute is the ascertained obligation of the owner of the land to pay, on account of such ownership, a specified sum towards the maintenance of civil government. We think that there must be an assessment and levy to warrant a judgment under this statute. We do not believe that the legislature intended to vest in the courts the power of making the assessment or the levy. But, if there is an assessment and levy, we believe that all omissions in matters of form are cured by the act of 1897. It is true that § 9 of that act does not in terms cure omissions in tax proceedings which should come before the court under that act. But this is the legal effect of the law where the taxpayer cannot show prejudice, for all defenses based on such omissions are swept away as defenses, except when prejudice can be affirmatively shown by the taxpayer. When the legislature, in authorizing an action in court upon a tax, provides, in the same law, that omissions in the proceedings shall not constitute a defense to the tax, the necessary consequence of such legislation is to validate whatever has been done in the assessment and levy, notwithstanding omissions in matters of form, provided, an assess-

ment and levy are in fact made. The validity of curative statutes in relation to tax proceedings has been sustained by this court, and that such legislation is constitutional has become one of the elementary principles of law. See *Shattuck* v. *Smith*, 6 N. D. 56, 69 N. W. Rep. 5. Barring the matter of the right to a hearing, (For this cannot be dispensed with,) the legislature may legalize any step or declare immaterial any omission in a tax proceeding, provided, of course, there is something which may be called an assessment and levy. If the officer authorized to make the assessment fails to make it, but the property is assessed by another, the act of the latter may be declared an assessment, provided he could have been authorized originally to make such assessment. In *Shattuck* v. *Smith*, we hold that a levy made without any authority of law could be validated by a subsequent statute. But we would not wish to be understood as carrying this argument so far as to validate the equalization of an assessment by a board which did not possess authority to equalize it at the time of such equalization, for in such case the citizen would be denied a hearing, he having no notice and being under no obligation to assume that such board would exercise functions not then vested in it by law. If somebody other than the county board of equalization had passed upon the assessment during the year when that board failed to meet, and the legislature had attempted to legalize such equalization, we would have before us a case widely different from the one we are actually discussing. The legislature has not attempted to declare that the taxpayer should have known that some then unauthorized body would hear and redress his grievance, but that in the very proceeding to determine the amount of the tax he should pay he may be heard in court as fully as he could have been heard had the proper board met at the proper time and listened to his complaint. The statute declares: "But no omission of any of the things provided by law in relation to such assessment and levy, or of anything required by an officer or officers to be done prior to the filing of the list with the clerk shall be a defense or objection to

the taxes appearing on any piece or parcel of land, unless it be also made to appear to the court that such omission resulted to the prejudice of the party objecting, or that the taxes against such piece or parcel of land have been partially, unfairly or unequally assessed, and in such cases, but in no other, the court may reduce the amount of taxes upon such piece or parcel and give judgment accordingly." It is obvious that the time of the hearing is unimportant. If at any period in the tax proceeding, or in the course of the judicial proceeding instituted to enforce the tax, the right to demonstrate that the tax against the land is excessive is granted by the statute, that protection which the constitution guaranties is fully enjoyed by the citizen. When the hearing shall be had, before what board, officer, or tribunal, what the procedure shall be, and, generally, all matters of detail, are wholly within the control of the legislature, provided the substance of the right be not impaired. Tax proceedings are summary in character. The public exigencies will not permit of the delays incident to ordinary proceedings in the courts of justice. The constitutional right to be heard in such proceedings must necessarily partake of the character thereof. Investigation need not be in a court of justice. It seldom is. The rigid rules of evidence which there obtain do not fetter the action of the reviewing board in its search for the truth. These principles are settled beyond debate. *State* v. *Certain Lands in Redwood Co.,* (Minn.) 42 N. W. Rep. 473; *Davidson* v. *New Orleans,* 96 U. S. 97; *Hagar* v. *Reclamation Dist. No. 108,* 111 U. S. 701, 4. Sup. Ct. 663. Wider latitude is and should be allowed the legislature in tax proceedings in determining what hearing will satisfy the constitution. It cannot be doubted that under this general principle it would have been competent for the legislature to have provided, in the law under which the taxes in question were levied, that the hearing should be had, not in the earlier stages of the proceedings before the county board of equalization, but at a later period, to-wit, in the action instituted to secure a tax judgment and

before another tribunal, *i. e.* the District Court. That hearing which the lawmaking power could have constitutionally declared sufficient it had the power to subsequently declare sufficient; the hearing being available to the citizen after the law providing for it had been enacted. On this branch of the case the decision of the Minnesota Supreme Court is directly in point. *State* v. *Certain Lands in Redwood Co.*, (Minn.) 42 N. W. Rep. 473. See, also, *Scott Co.* v. *Hines*, (Minn.) 52 N. W. Rep. 523. In *State* v. *Certain Lands in Redwood Co.*, Judge Mitchell said: "Appellant's second point, to-wit, that this statute violates section 7, article 1, of the constitution is predicated upon the assumption that it provides for the assessment of these back taxes without notice to the property owner, and without giving him any opportunity of being heard in the matter. Without following counsel through their exhaustive arguments upon this point, it is sufficient to say that it seems to proceed upon what we consider two false assumptions, to-wit: First, that in proceedings in the exercise of the taxing power the property owner is entitled to notice, and to be heard in each preliminary step in the proceedings, *pari passu* with their progress; and, second, that under the tax law (Gen. St. 1878, Ch. 11, § § 75, 79; Gen. St. 1894, § § 1584, 1588) the defenses which he may interpose by answer, when the state applies for judgment, are so restricted as not to include all the objections which go to the merits of the proceedings. Where, as in the present case, the tax is levied on property, not specifically, but according to its value, to be ascertained by some person appointed for that purpose, undoubtedly a party is entitled to notice and an opportunity to be heard; but we know of no case where it was ever held that a party was entitled to notice of, and to be heard in, each step in tax proceedings as it is taken. We doubt whether any tax law ever provided for any such thing. The principle running through all the cases is that a law does not infringe upon the constitutional provision under consideration if the property owner has an opportunity to question the validity or amount of the tax either before that amount is determined or in subsequent proceedings

for its enforcement. Whenever by law a tax is imposed upon property, and those laws provide for a mode of confirming or contesting it in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property, as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law. *Davidson* v. *New Orleans*, 96 U. S. 97; *Hagar* v. *Reclamation Dist. No. 108*, 111 U. S. 701, 4 Sup. Ct. 663. This right is fully given under the sections of the tax law already referred to." The court in this case interpreted the same statute which we are here construing. Having borrowed our law from Minnesota with this construction already placed upon it, the legislature, under a familiar rule, must be deemed to have adopted the construction as a part of the act itself. It follows that our answer must be in the affirmative to the following question certified to us by the District Court: "Should judgment be rendered in favor of the county for the taxes for the year 1889, with penalties and interest, regardless of the alleged failure of the county commissioners in that year to hold a session as a board of equalization?" We do not wish to be understood as holding that the act of 1897 operates to dispense with the necessity for any assessment or levy at all. The statute contemplates that there must be a valid assessment and levy antedating the institution of the action by the filing of the delinquent list. Aside from the matter of a hearing (for the hearing is allowed in the very action itself,) the act is curative only as to the omission of something in relation to the assessment or levy, or of some step in the subsequent proceedings, and is not a law vesting in the courts all the powers of administrative officers to make assessments and levy taxes. Before the suit is commenced there must be a tax. In this respect we agree fully with the reasoning of the court in *Adams* v. *Tonella*, (Miss.) 14 South. Rep. 17. Our criticism of that decision is that it assumes that a tax cannot be valid unless the hearing granted by the constitution has already been had when the action is instituted; whereas, it is not the fact

that the party has been heard, but that he has at some stage, before his liability is finally established, a right to a hearing, which takes away the constitutional objection that his property is sought to be wrested from him without due process of law. Does the law give him a hearing? If so, it matters not that the time for the hearing has not arrived ·when the action to enforce the tax is commenced. It is, nevertheless, a ·valid tax because the right to be heard is protected. The fallacy of the opinion in *Adams* v. *Tonella*, is that it assumed that, because the hearing had not been had when the action was brought, therefore the tax was void, although the very court which declared it void because the citizen had not yet been heard had full authority and was commanded by the statute to grant him the very constitutional hearing the denial of which was held by the court to be fatal to the tax. But, so far as the court in that case recognized the necessity of a tax as the basis of an action under a statute like Ch. 67 of the Laws of 1897, we fully indorse its views. The decisions in Minnesota, under practically the same statute, are in harmony with this interpretation of the law of 1897. *State* v. *Certain Lands in Redwood Co.*, (Minn.) 42 N. W. Rep. 473; *Commissioners* v. *Nettleton*, 22 Minn. 356. As the objection to the want of an opportunity to be heard is obviated by the statute, and as it cured all omissions in matters in relation to the assessment, levy, and subsequent proceedings, it is evident that at the time this tax action was instituted the taxes, so far as the omissions we have been considering are concerned, were valid taxes. If at the time the action is commenced there is no tax whatever, the institution of the suit will not authorize the rendition of a judgment therein as for the tax.

It is urged that judgment should not be rendered for the taxes of 1890, because the levy for that year was by percentages, and not in specific amounts, as required by the law of 1890, nor was the levy based upon an itemized statement. See § 48, Ch. 132, Laws 1890, and *Shattuck* v. *Smith*, 6 N. D. 56, 69 N. W. Rep. 5. Whether the curative feature of the act 1897 relates

to matters of substance as well as matters of form is not necessarily involved in the consideration of this point. It is evident from the opinion of Judge Mitchell in *State* v. *Certain Lands in Redwood Co.*, (Minn.) 42 N. W. Rep. 473, that the Supreme Court of Minnesota considered it as embracing only omissions in matters of form. But even if we should hold that it included those steps in a tax proceeding which, according to the adjudications, are regarded as substantial, the question would still remain whether the failure to make the levy, according to the statute, is a mere omission of something in relation to the levy, or a total failure to make a levy at all. Had the statute required the board, in making the levy, to spread upon the record the names of the members voting and how they voted on the matter of levy, and were the omission before us an omission to follow this requirement of the law, we would have a case of the omission of something in relation to the levy, and not the failure of the board to make any levy at all. But the case we are called upon to decide is widely different. It is not a case where, disregarding the omission of the board, we can still say that there has been a levy made. The omission was in failing to levy the tax in specific amounts. It is evident that it is only by holding that the act 1897 not only cures the omission, but also declares the act which was done, *i. e.* the levy by percentages, to be a good levy, that the validity of such levy can be sustained. Certainly a levy must be made in one of two ways, either in specific amounts or by percentages. At the time the pretended levy in question was made, a levy by percentages was not a levy at all. We have therefore the case of a failure to levy, and not a mere omission of some step in relation to the levy. The statement, in dollars and cents, of the sum of money for which the levy was made, was a vital part of the levy itself, and not some merely formal step in connection therewith. It is true that the legislature might have subsequently declared such levy valid. *Shuttuck* v. *Smith*, 6 N. D. 56, 69 N. W. Rep. 5. But the statute we are dealing with has no such scope. It cures omissions, but it does not attempt to provide

that that which was not a levy at all is nevertheless to be deemed to have been a levy as fully as though the things done had been originally declared sufficient to constitute a legal levy. In *Commissioners* v. *Nettleton,* 22 Minn. 356, the court held, under a statute precisely the same, that when there is no such levy as the law requires, the statute is not curative of such failure to make any legal levy at all. As there was no levy made in 1890, and as the act of 1897 does not purport to transmute into a levy that which was not a levy originally, we must answer in the negative the following question certified to us by the District Court, viz.: "Can judgment be rendered in favor of the county for the taxes of the year 1890, notwithstanding the finding as to the character of levy and the aforesaid evidence as to the failure to make an estimate of the county expenses and the levy based on the same?" Of course, the penalties and interest fall with the county tax, although the rest of the taxes for that year are unaffected. *State* v. *Certain Lands in Redwood Co.,* (Minn.) 42 N. W. Rep. 473.

We come now to another branch of the case. It is found by the District Court that in each of the years 1891, 1892, 1893, and 1894 there was included in the levy for that year a specified sum of money for miscellaneous expenses. On the basis of this finding we are asked to hold the levy in each of these years void to the extent of the amount extended against the lands in question on account of these sums for miscellaneous expenses in the several years, respectively. At the time these levies were made the act of 1890, requiring an itemized statement to be made by the board of commissioners as the basis of the county levy, and the levy itself to be made in specific amounts, was in force. As the appearance of the tax on the delinquent list created a *prima facie* case against the defendants (Laws 1897, Ch. 67, § 9), it is evident that, except in so far as there are findings in the case with respect to omissions in these tax proceedings, we must assume, in support of the tax, that every statutory step was regularly taken in the course of such tax proceedings up to the filing of the delinquent list in court. There being no finding that an itemized

statement was not made in these years, we must assume that in each of such years such a statement was made. Now, if in this statement, or in the levy of the tax, it appeared that there was an item for miscellaneous expenses, and this item was included in the levy for general county purposes, there would be nothing illegal in the action of the board in this respect. Assuming, in favor of the defendants, that § 1589 of the Compiled Laws of 1887 was not repealed by the act of 1890 (see the repealing section thereof, § 107), and that, therefore, the board was, under the act of 1890, restricted in the amount of its levy for general county purposes, yet, if the item for miscellaneous expenses was included in the general sum total of estimated county expenses for which a levy for general county purposes could be made up to the specified percentage permitted by statute, it is plain that no violation of the policy of limiting the amounts of levies for different purposes could result from sustaining a levy of which such an item formed a part. Had the board made a levy for all the purposes named in the statute, and had it then added a levy for miscellaneous expenses, the case would be radically different from the one which is before us. There is no finding that such is the fact. The finding is merely that in the levy made there is a sum for miscellaneous expenses. This finding is entirely consistent with this sum being set forth in the itemized statement as a part of general county expenses, and in the levy as an integral part of the levy for general county purposes. We must assume, in support of the tax, that a proper itemized statement, showing the different items of estimated county expenses, was made, and that this item for miscellaneous expenses is included in the list of such expenses. The presumption that the tax is legal cannot be overthrown by a finding of fact which is entirely consistent with the legality thereof. If the restriction on the amount of the levy, contained in § 1589, Comp. Laws, 1887, was not abrogated by the act of 1890, then the county auditor, on comparing the amount of the levy with the assessed valuation as equalized by said board, and finding that the levy as made would necessitate his extending

against the property for general county purposes a greater percentage than allowed by § 1589, Comp. Laws, 1887, must have reduced the levy to the maximum percentage permitted by that section. Laws 1890, Ch. 132, § 48. In support of the tax we must assume that this was done, or that the levy for general county purposes, in which this item for miscellaneous expenses must be deemed to have been included, did not exceed the maximum percentage allowed by the statute. We answer in the negative the following question certified to us by the District Court, to-wit: "Does the inclusion of a sum for miscellaneous expenses in the levy made by the county commissioners for the years 1891 to 1894, inclusive, prevent the attachment of interest and penalties on the taxes for the said years?"

Another defense is the statute of limitations. It is insisted that an action to enforce a tax is an action on a liability created by statute, and that, therefore, under § 5201, Rev. Codes, such action must be brought within six years. Our limitation statutes are made applicable to actions by or on behalf of the state. Section 5208, Id. As we view the case, the statute of limitations has no · application to this proceeding. It is analogous to a proceeding to foreclose a tax lien. This action is not *in personam*, but *in rem*. The land alone is proceeded against. No personal judgment is sought, nor does the statute contemplate that such a judgment should be rendered. We may assume that all right to recover a personal judgment for the taxes, the right to enforce which had accrued more than six years before this action was commenced, had been lost when this action was commenced. But this is not an action of that character. Our statutes have from an early period, uniformly declared that the lien of taxes on real estate should be perpetual. Such is still the law. Pol. Code 1877, § 56; Comp. Laws 1887, § 1612; Rev. Codes 1895, § 1239; Laws 1897, Ch. 126, § 72. It is impossible to give effect to this word "perpetual" if we assume that any limitation law applies to the taxes themselves so as to utterly extinguish them, or to the right to enforce the lien thereof on the land against which they were

levied.   As a perpetual lien was given, it is obvious that it was not intended that after any period of time, however long, the taxes themselves should become extinguished or the lien thereof destroyed.   So far as any right to enforce such taxes by an action against the owner of the land is concerned, it may be that the six-year limitation would apply.    But the lawmaking power clearly manifested a purpose that no lapse of time should destroy taxes, or the right to enforce the lien thereof against the real estate on which they were levied, when it declared that such lien should be perpetual.   A perpetual tax lien presupposes the continuance of the obligation of the citizen to pay the tax without reference to the lapse of time.   A lien for taxes, after the taxes themselves have been wiped out, is unthinkable.   And it is impossible to believe that the legislature meant to subject this lien, and the right to enforce it, to any limitation law; for then we would witness the anomalous condition, presented by a perpetual lien, of a perpetual tax, without any power in the public to make such lien available.   A lien that cannot be enforced is no lien at all.   No person in purchasing the property subject to it would pay any heed to it, for it could never work him an injury.   When the act of 1897 was passed, no flight of time would bar the right to foreclose these perpetual tax liens.   The passage of that act has not made the six year limitation statute, or any other limitation statute, applicable.   Save in form no change was wrought in the remedy by that statute.   The remedy given thereby is analogous to a foreclosure suit.   While there is some difference in the details or practice, the statutory remedy is, in substance, the same as the then existing remedy by a bill in equity.   The object of this proceeding is the same as that of a foreclosure action.   It is to have the lien established for the amount thereof, and the property sold to satisfy the same.   It follows that this statutory remedy is no more barred by the six year limitation statute than a suit in equity would be; and, while the authorities are not uniform, yet the great weight of authority, as well as the better reason, is in favor of the doctrine that an action in equity may be

maintained to enforce a lien, even after an action at law to recover the debt secured by the lien is barred by the statute. See *Norton* v. *Palmer*, 142 Mass. 433, 8 N. E. Rep. 346; *Shaw* v. *Silloway*, 145 Mass. 503, 14 N. E. Rep. 783; *Cerney* v. *Pawlot*, 66 Wis. 262, 28 N. W. Rep. 183; *Coles* v. *Withers*, 33 Grat. 186; *Smith* v. *Railroad Co.*, *Id.* 617; *Lashbrooks* v. *Hatheway*, 52 Mich. 124, 17 N. W. Rep. 723; *Webber* v. *Ryan*, 54 Mich. 70, 19 N. W. Rep. 751; *Baent* v. *Kennicutt*, 57 Mich. 268, 23 N. W. Rep. 808; *Pratt* v. *Huggins*, 29 Barb. 277; *Grant* v. *Burr*, 54 Cal. 298. And for cases exactly in point, under a statute making taxes a perpetual lien identical with ours, see *Beard* v. *Allen*, (Ind. Sup.) 39 N. E. Rep. 665; *Adams* v. *Davis*, 109 Ind. 10, 9 N. E. Rep. 162; *Rinard* v. *Nordyke*, 76 Ind. 130; *Adams* v. *Osgood*, (Neb.) 60 N. W. Rep. 869. It follows from these observations that we must answer in the negative the following question certified to us by the District Court, to-wit: "Is the statute of limitations, found in § § 5199 and 5201, Rev. Codes, a bar to this proceeding?"

The following questions can be considered together: "Are the penalties and interest allowed by the District Court as to any of the lands involved in the three answers excessive or insufficient?" "Should the judgment herein be modified in any respect?" It is claimed that chapter 132 of the Laws of 1890 repealed all statutes regulating interest and penalies on taxes for 1887, 1888, and 1889, and that, therefore, interest thereon ceased to run after such law took effect. The general doctrine that one complete revenue law supersedes another, is invoked by counsel for the defendants to sustain this contention. But repeals by implication are not favored. And the very repealing clause found in the act of 1890 negatives the idea that the legislature regarded that act as so complete in itself as to preclude the survival of any existing revenue statute. See section 107. As the act of 1890 is clearly prospective in its operation, there is nothing in its provisions inconsistent with the continued existence of the old statutes regulating interest on delinquent taxes. The old policy of imposing interest at the rate of 1 per cent. a month was continued by the law of

1890, and this is significant of a purpose not to abrogate such policy as to past unpaid taxes, but to leave those provisions of the old statutes which related to interest unaffected as to taxes which had been levied and had become delinquent under the previous system.

It is next urged that all right to interest ceased when the Revised Codes went into operation, *i. e.* January 1, 1896. It is true that the repealing section contained in the Revised Codes includes every statute on which rested the right to interest and penalties on taxes levied prior to the time when such codes became law. But the feature common to all the prior statutes, that delinquent taxes should draw interest at the rate of 1 per cent. a month, was preserved. See § § 1610, 1611, Comp. Laws, 1887; Ch. 119, Laws 1889; § 1, Ch. 145, Laws 1890; § 1, Ch. 107, Laws 1891; § 1, Ch. 115, Laws 1893; § 1238, Rev. Codes. Section 2683 of the Revised Codes provides that "the provisions of this Code, so far as they are substantially the same as existing statutes, must be construed as continuations thereof and not as new enactments." This feature of the prior acts is therefore to be regarded as never having been abrogated. It is merely continued in force,. although, for convenience of future reference, the form is adoped of repealing all the existing laws containing it, and at the same moment re-enacting it in the new revenue law. So far as penalties are concerned, it is unimportant to determine whether the old statutes are in this respect still in force as to past taxes, for the penalties on all those taxes accrued long before the Revised Codes became the law, and the repeal of a penal statute does not affect penalties which have accrued. Section 5142, Rev. Codes. All interest, however, will cease after the day when chapter 126 of the Laws of 1897 went into operation. This was March 8, 1897. The last section of this act (§ 110) repeals the revenue law contained in the Revised Codes. The new policy with reference to penalties and interest *is so radically differ-rent* from that found in the Revised Codes that it cannot be said

to be a mere continuation of the old law in this respect. Compare
§ 71, Ch. 126, Laws 1897, with § 1238, Rev. Codes.

We will now take up each year separately, and determine what
penalties and interest were due March 8, 1897. Under the law in
force in 1887 (§§ 1610, 1611, Comp. Laws, 1887,) a penalty of
5 per cent. must be added, with interest from the first Monday of
February, 1888, at the rate of 10 per cent. per annum, and also in
addition 1 per cent. per month to be added on the 1st of each
month. The interest at the rate of 10 per cent. per annum will
stop on January 1, 1896; this feature not being found in the
Revised Codes. But the interest at 1 per cent. a month, payable
on the 1st of each month, continues to the 8th of March, 1897; the
feature of the old law as to this rate of interest having been con-
tinued in force by the Revised Codes. Total penalty and interest
on taxes for 1887, 192 per cent. Under Ch. 119, Laws 1889 (the
interest feature of this law being continued under §§ 1238, 2683,
Rev. Codes,) the total amount of penalties and interest on taxes
for 1888, up to March 8, 1897, is 102 per cent. Under Ch. 145,
Laws 1890, total amount of penalty and interest on taxes for
1889 is 90½ per cent. Under section 66, Ch. 132, Laws 1890, penal-
ties on taxes for 1891 are 10 per cent. The act of 1893 does not
relate to back taxes. It is prospective in its operation. All that
could be collected under section 66 of the revenue law of 1890 is the
10 per cent. penalty therein named. Under the act of 1893 the total
amount of penalties and interest for taxes for 1892 is 51 per cent.
Under the same act the total amount of penalty and interest for
taxes for 1893 is 39 per cent., and on taxes for 1894 is 27 per cent.

The only remaining inquiries certified to us present the mineral
land question, which we have already passed upon. See *Railroad
Co.* v. *McGinnis*, 4 N. D. 494, 61 N. W. Rep. 1032. The facts of this
case are not more favorable to the railroad company than were
the facts in that case. Without further discussion of that ques-
tion, we will state our conclusion that all of the place lands
described in the first and second answers were subject to taxation
in the years in which taxes were levied against them. We there-

fore answer in the affirmative the two following questions certified to us by the District Court, viz.: "Were the lands described in said schedule, attached to said first answer, subject to taxation for the years 1887, 1888, and 1889?" "Were the lands described in said second answer subject to taxation in the years 1890, 1891, 1892, 1893, and 1894?" The judgment will be modified in conformity with the views expressed in this opinion. It is so ordered.

Since this opinion was written the decision of the Federal Supreme Court in the case of *McHenry* v. *Alford*, (decided Jan. 3, 1898, and not yet officially reported) 18 Sup. Ct. 242, has been rendered. That decision is binding on this court, and it is therefore our duty to hold, in accordance therewith, that the taxes levied against the place lands in 1887 and 1888 are not legal. To this extent our opinion is modified. It is not claimed by the counsel for the receivers that the taxes for 1889 are affected by that case. On the contrary, they concede that, under the evidence in this case, that decision has no bearing on the legality of such taxes.

BARTHOLOMEW, J. I concur in all that is contained in the opinion of the court in this case, except that portion thereof pertaining to the taxes for the year 1890. As to that I dissent.